E-filing

1
2   Sharon Bridgewater
    111 Preda Street # 7
3   San Leandro, CA 94577
    In Pro Se
4

FILED

DEC - 1 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

5
6
7

## UNITED STATES DISTRICT COURT FOR

## NORTHERN DISTRICT OF CALIFORNIA

8
9

ADR

10
11  Sharon Bridgewater,

CASE No. **C09-05663** SBA

12          Plaintiff,

**VERIFIED COMPLAINT FOR
MONETARY DAMAGES AND
INJUNCTIVE RELIEF**

13      Vs.

14  Hayes Valley Limited Partnership, (AKA,
    Hayes Valley Apartments II L.P.),
15  McCormack Baron Ragan Management
    Services Inc., MBA Urban Development Co.,
16  The Related Companies of California, Inc.,
    Sunamerica Affordable Housing Partnership
17  Inc., and Does 1 through 50 inclusive.
18

19          Defendants,

20

21

22          **VERIFIED COMPLAINT FOR
    MONETARY DAMAGES AND INJUNCTIVE RELIEF**
23

24

25

26

27

28

Verified Complaint for Monetary Damages and Injunctive Relief

1  Plaintiff Sharon Bridgewater, hereby moves the court pursuant to Rule 65 of the Federal Rule of

2  Civil Procedure for Injunctive Relief in the form of a Temporary Restraining Order re

3  Preliminary Injunction to preserve the status quo pending trial.

4

5

6  **INTRODUCTION**

7  Plaintiff is entitled to, when during the tendency of an action, it shall appear, by verified

8  complaint, affidavits or proof, that the defendants threaten to render a judgment ineffectual, a

9  TRO and preliminary injunction may be granted to restrain such removal or disposing,

10  dissipating, transferring, assets pending the litigation of trial to preserve the status quo pending a

11  final decision on the merits of the case.

12  Plaintiff has sustained injuries and damages as a result of the defendant's fraudulent,

13  criminal, outrageous conduct.  The defendants have only oppressed hindered, delayed and

14  dissuade Plaintiff from collecting damages and have refused to pay Bridgewater for damages

15  sustained.  The defendants have taken advantage of Bridgewater inability to retain legal counsel

16  and continue to take advantage of Bridgewater inability to retain legal counsel.  Absent of the

17  courts intervention the defendants will continue to cause Plaintiff irreparable harm.  To prevent

18  further irreparable harm and injury Plaintiff seeks a temporary restraining order pending the

19  merits/trial of this case.

20

21

22

23

24

25

26

27

28

Verified Complaint for Monetary Damages and Injunctive Relief

-2-

## BACKGROUND AND PREDICATES TO THIS COMPLAINT

This case stems from the defendants unlawfully and illegally obtaining possession of premises more commonly known as 427 Page Street, San Francisco, CA. 94102.

The defendants wrongfully evicted Bridgewater pending Christmas 2007/New Year 2008. Bridgewater was deprived property without the opportunity to be heard or "pre-hearing eviction hearing." During this time Bridgewater was under so much emotional and mental anquish, trying to locate another apartment and trying to get her possessions out of the apartment in a hurry that she broke her foot.

Bridgewater located another apartment and moved into the new apartment. During this time Bridgewater upon receiving help at local legal agency an avocate obtained Bridgewater's unlawful detainer file from the Superior Court and **discovered** that the defendants filed an unlawful detainer lawsuit for possession of the premises and entered into a "pre-eviction" hearing with an unauthorized party a over a year and half prior(4/20/2006 and 5/3/2006) in addition, to having accepted all the rental payment as demanded. Bridgewater immediately petitioned the court for a [**vacated Judgment which was granted**]. Bridgewater became the **prevailing party** in the action. The defendants retaliated, and continued to prosecute the case to hurt and oppress Bridgewater further. On the day trial, Feb. 19, 2008, during the manadotory settlement conference the defendants defendant went over and beyond their professional duties, formed a fraudulent [**VOID**] stipulated Judgment used the court to execute and enforce the agreement [the court did not have jurisdiction to entertain] committed fraud, used coercion, threat and force, and deprived Bridgewater of her jury trial and forced Bridgewater out of the

Verified Complaint for Monetary Damages and Injunctive Relief

apartment. (Bridgewater insisted the defendants add #15 to the agreement see exhibit *l* )

Bridgewater never had a "pre-eviction hearing" never was afforded the opportunity to be heard, was deprived of her right to a jury trial.

**[ 1.] [A Judgment is void if the court that rendered judgment lacked jurisdiction of the subject matter [ 2.] acted in a manner inconsistent with due process[3.] lacks jurisdiction over the parties or the subject matter, or lacks the inherent power to enter a judgment [ 4.] **Res judicata consequences will not be applied to a void judgment which is one which, from its inception, is a complete nullity and without legal effect]**

Unlawful detainer are summary proceeding under California law and requires strict compliance with notice requirements. A prequite to filing an unlawful detainer action requires the service of a proper notice to pay rent or quit. In this case, the defendants never served Bridgewater with a proper notice to pay rent and never met the [**statutory requirement**] to even file and unlawful detainer lawsuit.

[The defendants were at all time accepting rental payments, had accepted all rental payments[if a landlord accepts rents after the service of a notice it invalidates the notice. The landlord may amend his/her complaint to reflect a partial payment received. In this case, the defendants never amended their complaint. After Bridgewater received the vacated Judgment the case should have been immediately dismissed and the commencement of a new unlawful detainer action lawsuit should have been filed. However, presuming the defendants did all of the above, the unlawful detainer lawsuit would still be rendered VOID. The pre requite to file an unlawful detainer requires the service of a proper notice to pay rent or quit. In this the defendants have failed to provide, in violation of CCP 1161.]

**The Judgment obtained by the defendants is VOID from its inception, and is completely null and without legal effect.**

I.     The defendants never served a **proper notice** to pay rent or quit which is a pre-
       Requisite to file an unlawful detainer lawsuit. (the entire unlawful detainer lawsuit is void)

II.    The defendants never met the **statutory requirement** to file an unlawful
       Detainer lawsuit; and the judgment obtained lacked/inconsistent with due process.

III.   **Plaintiff received a vacate Judgment of the wrongful eviction and became the prevailing party
       this case required an immediate dismissal** all rental payments and the case required an immediate
       dismissal.
       (See undisputed facts exhibit___*2*___ )

IV.    **Plaintiff never had a pre-eviction hearing(due process) and never had the opportunity
       To be heard.**

Verified Complaint for Monetary Damages and Injunctive Relief

In California the statutes are very strictly enforced when it comes to evicting a tenant. All the "t"s have to be crossed and all the "i" s have to be dotted.   A Notice is valid and enforceable only if the landlord strictly complies with the statutorily requirement.   The amount of the rent due must be exact and state the "exact" dollar amount do. Any material error is sufficient to invalidate the notice.(Cal. Civil Procedure 1161

## STANDARD OF REVIEW

1.  Summary judgment may be granted if "the pleadings, and the materials on file, and any affidavits [or declarations] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed R. Civil P.56(c)

2.  [Due to the outrageous conduct of the defendants unlawful and illegally evicting tenant from her resident  causing Plaintiff to be homeless, displaced for over a year and half; and causing Plaintiff to suffer extreme hardship, extreme mental and emotional distress [tolling/disability/discovery should apply to the statue of limitation on the claims of relief]

## JURISDICTION

3.  Pursuant to 28 U.S.C. § 1331 at least one of the Plaintiff claim arises under the laws, Constitution of the United States of America.

Verified Complaint for Monetary Damages and Injunctive Relief

4. The jurisdiction of this Court is invoked pursuant to for violation of Plaintiff 42 section 1983. Plaintiff been denied her 7th amendment right to a jury trial as secured by the United States Constitution.

5. This Court has supplemental jurisdiction over state causes of action pursuant to 28 U.S.C. §1367, as claims so related to other issues in the action that they form part of the controversy.

6. The damages are in excess of $75,000.00.

## INSTRADISTRICT ASSIGNMENT

7. The incident took place in the City of San Francisco, State of California

## DEFENDANTS

8. The defendants Hayes Valley Limited Partnership, develop, finance and manage housing development for low and mixed income throughout america with the assistance of government funds via "HOPE VI"

9. Hayes Valley Limited Partnership(Partners) are <u>multi-billion</u> dollar Real Estate Developers, own and management Real Estate across America and internationally.(see exhibit 12    )

10. The property is managed by McCormack Baron Ragan Management Services Inc., a subsidiary of McCormack Baron Management Company one of the General Partners.

Verified Complaint for Monetary Damages and Injunctive Relief

-6-

11.    At all times mentioned herein the Defendants were obligated to comply with HUD Regulatory and Management.

12.    At all times mentioned herein the Defendants were obligated to comply with applicable laws of the State of California in the management of the public housing facility.

13.    The Defendants MBA Urban Development Co Inc.,a Missouri Corporation is an general partner with Hayes Valley Limited Partnership.

14.    The Related Companies of California, Inc. a California Corporation is a general partner with Hayes Valley Limited Partnership.

15.    Defendants Sunamerica Affordable Housing Partnership Inc. a California Corporation is a partners with Hayes Valley Limited Partnership.

16.    Defendants McCormack Baron Ragan Management Service Inc. and MBA Urban Development Co. Inc., are so intertwined with joint directors.  In reality the very same entity as they have the same parties involved in each limited partnership and involved in the day to day management of the rental unit involved in this case.

17.    At all times mentioned herein, Hayes Valley Limited Partnership and Hayes Valley Apartment II LP was registered with the California Corporations division was conducting business under two or more different names.

18.  The agents, servants, employees were acting in the scope of their performance of duties and acting under, in concert with the defendants.

19.    The Managing Agent(Property Manager for Hayes Valley) exercised independent authority and judgment in the corporate decisions.

20.  The Defendants, at all times mentioned herein, were collecting rents and were not licensed to collect rents as required by the California Department of Real Estate in

Verified Complaint for Monetary Damages and Injunctive Relief

violation of California Business and  Professional Code § 10131(b)

21. At all times mentioned never had a licensed Property Manager on duty in a nearly

300 unit complex.

22. Plaintiff does not know the true names and capacities of defendants Does 1 through 50

inclusive and needs to obtain said information  through discovery.


**PLAINTIFF**


23.  At all times mentioned herein was a tenant in legal possession of a rental unit.

24.  At all times mentioned herein was a tenant at 427 Page Street, San Francisco, CA

from January 2005 to May 2008.

25. At all times mentioned had a valid lease agreement contract.

26. At all times mentioned herein was/and is a disabled individual as defined by

the Social Security Administration

27.  Plaintiff  obtained a Bachelor of Art Degree and was working on a

Master Degree at the time of the incident.

28. After years of struggling, as a single parent,  Plaintiff was on the verge of being

completely rehabilated.  For once in her life was almost completely free of dependency

on any federal public assistance at the time of the incident.


Verified Complaint for Monetary Damages and Injunctive Relief

–8–

29. The defendant's actions have caused Plaintiff the inability to complete her Masters

    Degree or pursue her business.  The defendants actions has cause Bridgewater relapsed

    into total disability.(mentally disabled)

30. Plaintiff has been under a doctor's care since the incident.

31. Have a permanent left foot lifetime injury and right knee and right leg impairment as

    a result of the incident.

32. Have been homeless, lived in countless homeless shelters and have been displaced

    since the time of the incident.  Bridgewater just obtained housing in <u>June 2009.</u>


## STATEMENT OF FACTS & SEQUENTIAL EVENTS

33. **Bridgewater "unexpectly" received a writ for possession of  premises  notice posted**

    **on her front door during the Christmas 2007/New Year 2008 holiday season.(see**

    **exhibit** <u>3</u> **)**  Bridgewater called the local sheriff to verify the authenticity of  the

    document posted on her front door.  The sheriff confirmed it was the real thing and

    insisted and instructed Bridgewater to vacate  the premises **within five days**.

34. Bridgewater had one thing on her mind at this point, securing another apartment.

35. Bridgewater frantically, under great mental and emotional distress called other

    landlords.  It was virtually impossible to secure an apartment during time of the year.

    (Christmas/New Year Period); *everyone were enjoying the holidays.*

36. Bridgewater frantically petitioned the court for a one week "STAY."  After an

    excoriating and extensive search **Bridgewater finally located another apartment.**

Verified Complaint for Monetary Damages and Injunctive Relief

37. **Bridgewater section 8 housing authority Specialist approved Bridgewaters new Apartment and was in the process of transferring her rental assistance section 8 payment voucher to her new apartment.**

38. **Bridgewater section 8 Specialist gave Bridgewater the OK to move into her new apartment.( see exh. 4    )**

39. Bridgewater borrowed money from family members for her security deposit for her new apartment and **moved out of Hayes Valley into her new apartment on Oakdale, S.F.**

40. Bridgewater <u>broke her left foot</u> as a result of mental anquish of receiving an unexpected writ for possession posted on her front door while moving and having to relocate on such short notice.

41. During this transition, Bridgewater was under so much mental, physical and Emotional distress and strain, from being on <u>crutches, in excuritating pain, going to various agencies in the freezing rain trying to defend herself from the "unexpected" writ for possession of premises and moving, etc.</u>

42. During this time Bridgewater was going back and forward to the doctors and hospital. Back and forward to Eviction Defense Collaborative agency(EDC).   Back and forward to the section 8 office.   Back and forward to Superior Court of San Francisco, and the Access center trying to get some answers on how she could be evicted without a "pre-eviction hearing".

43. **On or about Jan. 18th 2008,** upon receiving legal assistance at a community legal agency "the ACCESS" , the advocate obtained the Unlawful Detainer files from the Superior Court filed by the defendants.  Upon receiving the files the advocate **\*\*DISCOVERED the filed an unlawful detainer lawsuit nearly two year prior and entered into a "pre-**

Verified Complaint for Monetary Damages and Injunctive Relief

hearing eviction agreement" hearing agreement with an unauthorized party nearly a

year and a half prior.  In addition to having collected all the rents. *[due to Bridgewater*

*disability her son routinely made the monthly rental payment and managed household*

*finances however, he was not authorized to sign for Bridgewater-the defendants did not*

*get Bridgewater's permission nor did they have the authority to enter into a "pre-eviction"*

*without her knowledge or consent or without a power of attorney letter and they had a*

*duty to inform Bridgewater of this agreement.]* (exhibit 5 ) Please notice signature!
nor did Bridgewater have knowledge of this agreement!

44. Bridgewater immediately filed a motion to vacate the Judgment for possession of

Bridgewater's apartment the Defendants had received.

45. On Jan. 22, 2008 a Superior Court Judge granted Bridgewater's  motion and vacated the

Judgment. ( see exhibit  6    )

46. **Bridgewater became the prevailing party in the unlawful detainer case(as the**

**defendants accepted all rents as demanded in the unlawful detainer lawsuit and the**

**case required an immediate dismissal).**

47. Shortly after Bridgewater obtained the vacation of the Judgment for the wrongful eviction,

Bridgewater received an **"unexpected" visit from her section 8 worker at her new**

**apartment on Oakdale Street, in San Francisco.**   Bridgewater section 8 housing

Specialist informed Bridgewater because she had received a vacated Judgment( exercised

her legal right) **Hayes Valley Property Manager** would **not release Bridgewater's section**

**8 payment voucher to new apartment(on Oakdale)**

48. Bridgewater section 8 worker instructed Bridgewater **to move out of her new**

**apartment(on Oakdale) back to Hayes Valley Apartments.**  Bridgewater, once again, had

to **unexpectly move "A WHOLE"** apartment full of furniture **out of Oakdale, back to**

Verified Complaint for Monetary Damages and Injunctive Relief

**Hayes Valley.(On crutches of which both apartments were second story floors within**

**apprx. 3-4 week time frame)**

49.  Bridgewater was under so much emotional and mental distress and anquish, having to

"UNEXPECTEDLY" MOVE A WHOLE APARTMENT FULL OF FURNITURE IN AND

OUT(renting uhaul trucks, begging relative for money etc. )OF SECOND STORY

APARTMENTS ON CRUTCHES WITHOUT ANY PRIOR NOTICES"(within a three week

time frame) with no money; going back and forward to the hospital, doctors(broken foot),

section 8 offices, Superior Court, community organizations, in the freezing cold rain,

50. Bridgewater completely relapsed into total mental incapable and disabled at this point.

51. Once Bridgewater **moved back into Hayes Valley**, Bridgewater **continually** tried to contact

the Property Manager to get an amount due to cure any back rent that might have been owed

to remain in the apartment.

52. The Property Manager avoided bridgeater and refuse to communicate with Bridgewater.

53.Bridgewater went to the Eviction Collaborative Defense(EDC) a community agency in hopes

that they could communicate with her landlord an "amount due."

54.Bridgewater applied for financial assistance and her application was approved.(exhibit ˉ7 )

55.**On Feb. 15, 2008,** Community Coordinator Amy Price EDC attempted to get an amount

from the defendants and the refuse to give her an amount due.( see exhibit 8   )

56. **Feb. 19, 2008, ON THE DAY OF TRIAL** at the manadatory settlement conference the

defendants(**made a intentional false misrepresentation**) told

Verified Complaint for Monetary Damages and Injunctive Relief

Bridgewater she owed the "high and outrageous" amount of $2,979.74 and Bridgewater did

not owe, and demanded this amount from Bridgewater.

57.  During the manadatory settlement conference the defendants and their attorney

concealed facts from the Pro tem Judge and Bridgewater that all rents were paid and

accepted by the defendants as demanded.

58.  The defendants took complete advantage of Bridgewaters mental, emotional and

physical distress(of what Bridgewater had experienced of moving "back and forth"

numerous times. within approx. month time frame) The defendants then used their

position and authority as a Property Manager and a Attorney, used undue influence and

threaten Bridgewater with an **ultimatum**, and demanded Bridgewater to pay the**"full

amount" $2,979.74 or move in 90 days as consideration to remain in the unit**( see

exhibit_____Plaintiff demands)

59.  There was no way Bridgewater could meet the demands of the defendants and was

coerced to enter into the VOID contract against her will and was deprived a jury trial.

Bridgewater told the defendants she needed:

    a.   A good rental reference to secure another apartment.

    b.   Her security deposit to apply to secure and apply to another rental unit.

**60.  The defendants then made a promise to Bridgewater with the intent not to perform

and promised Bridgewater that if she moved out in 60 days they would refund her

full security deposit of $1,600.00.**

61.  Bridgewater agreed to move in 60 days.(see exhibit _____offer has been raised to 60

days).

Verified Complaint for Monetary Damages and Injunctive Relief

62. The defendants then **made a third promise to Bridgewater with the intent not to perform** and promised Bridgewater they would refund her security deposit in accordance with California law.(see exhibit -___# _).  The defendants did not give Bridgewater **one red penny of her security deposit and did not account for Bridgewater security deposit in accordance with California Law.**

California Civil Code Section 1950.5.

(g) (1)   No later than 21 calendar days after the tenant has  vacated the premises, but not earlier than the time that either the landlord or the tenant provides a notice to terminate the tenancy under Section 1946 or 1946.1, Section 1161 of the Code of Civil Procedure, or not earlier than 60 calendar days prior to the expiration of a fixed-term lease, the landlord shall furnish the tenant, by personal delivery or by first-class mail, postage prepaid, a copy of an itemized statement indicating the basis for, and the amount of, any security received and the disposition of the security and shall return any remaining portion of the security to the tenant.

(See exhibit_____ - rental ledger and deposit accountability date - The defendant's date of  accountability of the deposit is 29 days)

63. The defendants then told Bridgewater that they would give her a good rental history reference.  To secure another apartment.  The defendants used "expressed language" that gave no accountability for a good rental reference (see exhibit #_____)

Verified Complaint for Monetary Damages and Injunctive Relief

-14-

64.  It has been virtually impossible to obtain housing in California because of the defendants

"fraudulent. deceptive and outregous conduct due to Bridgewater name in an Unlawful

detainer data base for wrongful eviction for non-payment of rent.

65.  **Plaintiff once again  pursuant to the VOID fradulant Judgment obtained by the**

**defendant was once again forced to  vacate the apartment.**

66.  **Plaintiff was under so much mental and emotional distress, from unexpectly having to**

**relocate on Christmas/New Year and numerous times within a short period with no**

**money.  in and out of apartments in excruticating pain  on a  broken foot, Plaintiff**

**moved to Hawaii and was rendered  homeless(see exhibit** ||      **)**

67.  Since the incident, Plaintiff have been homeless, lived in countless homeless over the last

past year and half, and has been displaced. Have been unable to obtain decent housing

because her name is wrongfully in an unlawful detainer data base for nonpayment of rent.

Bridgewater lost her car due to "extreme hardship" and must walk everywhere causing

extensive and further damage to her broken foot and right knee and leg. Plaintiff has been

under a doctor care.  Plaintiff just obtained housing in June 2009 of this year (see exhibit ᧞)

[Bridgewater been homeless and displaced the last past year and half, have lived in countless homeless shelters, have had to "unexpectedly" move on countless occasions. Has not be stable.  Has been unable to litigate this case due to extreme hardhip and lack of money and mental disability caused by the defendants.  Plaintiff just obtained housing in June of this year and must again move very soon because the apartment is not up to City Code.  Plaintiff have been unable to obtain decent housing because her name is in an unlawful detainer data base for non-payment of rent due to the fraudulent conduct of the defendants.  Has suffered extreme hardship due to the defendants outregous, malicious conduct of the defendants.  In all causes of action the discovery/tolling/disability should apply as to the statue of limitations.]

Verified Complaint for Monetary Damages and Injunctive Relief

-15-

1

2   [ 1.] [A Judgment is void  if court that rendered judgment lacked jurisdiction of the
3   subject matter [ 2.] acted in a manner inconsistent <u>with due process</u>[3.] lacks jurisdiction
    over the parties or the subject matter, or lacks the inherent power to enter a judgment [ 4.]
4   **Res judicata consequences will not be applied to a void judgment which is one which,
5   from its inception, is a complete nullity and without legal effect.]*(The defendants never met
    the statutory requirement to file an unlawful detainer laws 2.The case required an immediate
6   dismissal after Bridgewater received a vacated Judgment as the defendants accepted all rents as
7   demanded. 3.The Stipulated Judgment from it's inception is complete void and without legal
    effect.*

8

9

10              **FIRST CLAIM FOR RELIEF FOR
11           COMMON LAW MALICIOUS PROSECUTION
       AGAINST ALL DEFENDANTS and Does 1 through 50 inclusive.**

12

13

14   68.  The defendants initiated an unlawful detainer lawsuit against Bridgewater and never <u>met</u>

15        <u>the statutory requirements to do so.</u>

16
17   69.  The defendants on the defendants gave Bridgewater improper notice to pay rent or quit
18        "with not exact dollar amount due" in violation of California Civil Procedure 1161and
19        Bridgewater was not delinquent in rent. (on Nov. 12, 2007)

20   70.  The defendants gave the notice to Bridgewater maliciously and had no reason to give
21        Bridgewater a notice to pay rent or quit.

22   71. Bridgewater was not delinquent in rent and owed $0(zero) dollars and had credit balances
23        on her rental ledger.
24

25   72. The defendants did not have probable cause to give Bridgewater a notice to pay
26        rent or quit when Bridgewater had credit balance on her rental ledger.
27

28

         Verified Complaint for Monetary Damages and Injunctive Relief

73. The defendants then maliciously evicted Bridgewater pending Christmas 2007/New Years 2008, without the opportunity to be heard. (see exhibit 3 )

74. The defendant's ulterior motive was to hurt and oppress Bridgewater and evict her during the holidays. Bridgewater received a vacate Judgment of the wrongful eviction.(see exhibit 6 )the lawsuit ended in Bridgewater favor.[Bridgewater became the prevailing party] as all rents were paid. Bridgewater was in legal peaceful possession of the premises,

75. Any reasonable person would have investigated the facts surrounding the vacated Judgment. The defendants then retaliate.

76. The defendants then instructed their hired attorney to continue to prosecute the case to hurt and oppress Bridgewater further.

77. The defendant's attorney then aided and abetted her client and continued to prosecute the case. The Creason and Rashad then conspired to continue to prosecute the case. Creason and Rashad went over and beyond their professional duties, knowingly, willingly, ratified and approved and conspired, formed a fraudulent Stipulated Judgment [**the court did not have jurisdiction to entertain**]. On Feb. 19, 2008 on the day of trial, the defendants used the court to execute and enforce the agreement, use fraud, coercion, threat and force and deprived Bridgewater of a jury trial and force Bridgewater out of the apartment.

78. The defendants willfully, knowingly and intended to maliciously prosecute the case/Bridgewater. The defendant ulterior motive was to hurt and oppress Bridgewater.

79. The defendants knowingly, willfully, intended to maliciously prosecute Bridgewater.

Verified Complaint for Monetary Damages and Injunctive Relief

-17-

The action of the defendants constitutes malicious prosecution, and proximately caused

Bridgewater damage.  Bridgewater has been harmed by the defendant's actions and has

damages.

79.   Bridgewater is entitled to (compensatory/ special/general/statutory/nominal) damages.

80.   The defendants acted with (fraud/malice/oppression/reckless disregard).  Plaintiff is thus

entitled to punitive damages against the defendants subject to net worth of said defendants

pursuant CCP § 3294 ( c )

81.   Bridgewater has compensatory damages in the amount of $100.00(one hundred)

Plaintiff request an award of punitive damages in the amount

Ten million dollars.($10,000,000.000.00).

**SECOND CLAIM FOR RELIEF**

**FOR WRONGFUL EVICTION**
**AGAINST ALL DEFENDANTS and Does 1 through 50 inclusive.**

82.   At all times Bridgewater had a valid lease agreement. At all times Bridgewater was in

legal possession of the premises.  The defendants filed an unlawful detainer lawsuit for

possession of premises at 427 Page Street, San Francisco.

Verified Complaint for Monetary Damages and Injunctive Relief

-18-

83. The defendants filed an unlawful detainer for possession of the premises and never met

   the statutory requirement to do so.

84. Bridgewater had a right to maintain and retain her possession of her apartment.

85. The defendants wrongfully evicted Plaintiff pending Christmas 2007/New Year 2008

   without the opportunity to be heard or a "pre-eviction hearing."

86. Bridgewater received a vacated Judgment and became the **[prevailing party]**.

87. On Feb. 19, 2008, the defendant retaliated and continued to maliciously prosecute the

   case to hurt and oppress Bridgewater further.  The defendants knowingly, willingly,

   intended and went over and beyond their professional duties, formed a fraudulent

   Judgment[the court did not have jurisdiction to entertain], used threat,coercion and force,

   deprived Bridgewater of a jury trial and forced Bridgewater out of the premises.

88. The defendants actions constitute wrongful eviction and proximately caused Bridgewater

   harm and injury.  Bridgewater have been damaged by the defendants conduct and have

   damages. The defendants acted with (malice/fraud/oppression).  Bridgewater is entitled to

   (compensatory/special/general) damages.

89. Plaintiff is also entitled to treble damages as all times mentioned the Defendants never

   Had a business license issued by the California Department of Real estate herein

   mentioned in violation of Business and Professional code section 10131(b) which

   requires a treble  damages pursuant to C.C.P. § 1029.8(a).  San Francisco Rent

   Ordinance has a very strict ordinance in evictions and evictions of disabled individuals

90. This claim for relief of wrongful eviction has been tried in a court of law (trier of the

   fact) Bridgewater received a vacated Judgment by a Judge, and is the prevailing party.

   the [prevailing party] to the action.

Verified Complaint for Monetary Damages and Injunctive Relief

91.   Pursuant California Civil Code § 3294 ( c ) Bridgewater is entitled to

punitive damages.   Bridgewater has compensatory damages in the amount of

$5,000.00.      Bridgewater request a punitive damages in the amount of two million

(2,000,000.00 )dollars.

### THIRD CLAIM FOR RELIEF
### FOR CONSPIRACY

92.   All preceding paragraphs are hereby incorporated by reference as it fully set forth herein.

Rashad Property Manager for Hayes Valley retaliated against Bridgewater after she had

received the vacated Judgment for wrongful eviction during Christmas/New Year and

instructed her attorney Jane Creason to continue to prosecute the case to hurt and oppress

Bridgewater further.   Creason then aided and abetted her client, the two then intended,

willfully, confirmed, ratified and conspired continue to prosecute maliciously prosecute.

93. On or about Feb. 19, 2008, on the day of trial Creason and Rashad then confirmed, ratified,

approved, willfully, knowingly intended, and conspired to form a fraudulent Stipulated

Judgment [**the court did not have jurisdiction to entertain**] use the court to execute and

enforce the agreement.   Creason and Rashad conspired to commit fraud on the court,

commit intrinsic fraud, undue influence, threat, coercion and force to deprive Bridgewater

of a jury trial and force Bridgewater out of her apartment.

Verified Complaint for Monetary Damages and Injunctive Relief

94. Pursuant to the [VOID] "fraudulent" Stipulated Judgment dated Feb. 19, 2008, states "Each signatory hereto represents that they have the expressed authority from the party they represent to sign for and bind that party to the terms herein." (see exhibit ___ # 이버

95. The defendants knowingly, willing, intended, ratified and approve and conspired.  The defendant's actions constitute civil conspiracy and proximately caused Bridgewater injuries and damages.  Bridgewater has been damaged by the defendant's actions and has damages.

96. .Bridgewater is entitled to (compensatory/special/ general/statutory/nominal) damages.

97. The defendants acted with (fraud/malice/oppression/reckless disregard). Plaintiff is thus entitled to punitive damages against the defendants subject to net worth of said defendants pursuant CCP § 3294 ( c )

98. Bridgewater has compensatory damages in the amount of $100.00. (One hundred)

Plaintiff request an award of punitive damages in the amount an amount
Of ($1,000,000.00) million dollars.

## FOURTH CLAIM FOR RELIEF
## FOR
## DEPRIVATION OF PLAINTIFF Right to a Jury Trial
## ( US Constitution 7th amendment right)
## AGAINST ALL DEFENDANTS and Does 1 through 50 inclusive.

99. All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

Verified Complaint for Monetary Damages and Injunctive Relief

-21-

Bridgewater had a right to be free from any interference or attempts to interfere by threats, intimidation, or coercion, with her exercise and enjoyment of rights secured by the U.S. Constitution.  Bridgewater had a right to a jury trial.

100. On. Feb. 19, 2008, the day of trial,   Property Manager Rashid, acting under the color of law, and acting under the scope of her professional duty as a property Manager intended, willfully and knowingly executed and enforced  a fraudulent [void]agreement,[the court did not have jurisdiction to entertain], and deprived Bridgewater of her 7th amendment right to a jury trial as secured by the 7th amendment constitution.

101. The defendants knowingly, willfully and intended to deprived Bridgewater of a jury trial.

The actions of the defendant's constitute deprivation of Plaintiff right to a jury trial, and proximately caused Bridgewater harm and damages.  Bridgewater have been harmed and damaged by the defendants actions and have damages.

102. Bridgewater is entitled to (compensatory/special/general/statutory/nominal) damages. The Defendants acted with (fraud/malice/oppression/reckless disregard). Plaintiff is thus entitled to punitive damages against the defendants subject to net worth of said defendants pursuant CCP § 3294 ( c )

103. Bridgewater has compensatory damages in the amount of $100.00. (One hundred) Plaintiff request an award of punitive damages in the amount of

Ten million dollars. ($10,000,000.00)

Verified Complaint for Monetary Damages and Injunctive Relief

-22-

## FIFTH CLAIM FOR RELIEF
### FOR
## COMMON LAW RETALITORY EVICTION
### AGAINST ALL DEFENDANTS and Does 1 through 50 inclusive.

104. All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

Bridgewater at all times mentioned had a valid HUD lease agreement.

105. The defendants wrongfully evicted Plaintiff pending Christmas 2007/New Year 2008.

Bridgewater exercised her legal right and received a vacated Judgment for the wrongful

eviction. The defendants retaliated.

106. On Feb. 19, 2008, the defendants retaliated and went over and beyond their professional

positions intentionally, knowingly and willingly formed a fraudulent [VOID] Stipulated

executed and enforced a the Judgment, (the court did not have jurisdiction to entertain)

increased Bridgewater rent in access of $1,000.00 without due process or prior notices of

rent increases as given to other tenants; and required by statue in complete retailiation of

Bridgewater exercising her legal rights by obtaining a vacate judgment.

107. The defendants knowingly, willfully, intended to retaliate and evict Bridgewater. The

defendant's actions constitute retaliatory eviction and proximately cause Bridgewater

harm damage and injuries.

108. Bridgewater have been harmed and damaged by the defendants actions and have

109. The defendants acted with malice and forethought have committed and intended to

Commit common law retaliatory eviction.

110. Plaintiff is entitled to treble damages as all times mentioned the Defendants never had

a business license issued by the California Department of Real estate herein mentioned

in violation of Business and Professional code section 10131(b) which requires a treble
Verified Complaint for Monetary Damages and Injunctive Relief

-23-

damages pursuant to C.C.P. section 1029.8(a) as the injury and damages were directly

and proximate caused by an unlicensed Property Management Company

rendering services in the collection of rents. ). San Francisco Rent Ordinance has very

strict law pertaining to eviction and especially of the disabled.

111.   Bridgewater is entitled to (compensatory/special/general/statutory/nominal) damages.
The defendants acted with(fraud/malice/oppression/reckless disregard).  Plaintiff is thus
entitled to punitive damages against the defendants subject to net worth of said defendants
pursuant CCP § 3294 ( c )

112.  Bridgewater has compensatory damages in the amount of $100.00. (One hundred)

113.  Plaintiff request an award of punitive damages in the amount
Five million dollars. ($5,000,000.00)

**SIXTH CLAIM FOR RELIEF FOR**
**INTENTIONAL MISREPRESENTATION**
**AND CONCEALMENT OF KNOWN FACTS**
**AGAINST ALL DEFENDANTS and Does 1 through 50 inclusive.**

114. All preceding paragraphs are hereby incorporated by reference as if fully set forth

herein.

Verified Complaint for Monetary Damages and Injunctive Relief

-24-

115. The Defendants with malice and forethought, willfully, knowingly and intentionally misrepresented material facts to the superior Court of California under penalty of perjury.

116. The Defendants knew at all times following facts were not true and an unlawful detainer must be pled under penalty of perjury.

117. The defendants had the apartment posted for eviction over the Christmas 2007/New Years 2008 period when Bridgewater never knew about any court proceeding initiated by the defendants.

118. The Defendants misrepresented material facts on numerous occasions to the Plaintiff herein and the Court as follows:

119. On Feb. 19, 2008, during the settlement conference the misrepresented fact that their was outstanding rent due by Bridgewater of $2,124.74 and an amount of $450.00 attorneys' fees and 405.00 cost totally an amount of $2979.74 when in fact Bridgewater did not owe.

120. Defendants concealed said facts from both plaintiff and also the Court and Knowingly obtain an eviction for plaintiff herein apartment.

121. Misrepresented that defendants were the prevailing parties in the unlawful detainer lawsuit.

122. Misrepresented that they were entitled to cost and attorneys fees.

123. Misrepresented that they would refund plaintiff herein security deposit and did so with no intentions to do so.

124. Misrepresented in said settlement agreement that they would give only a neutral reference when they had no intentions to do so.

Verified Complaint for Monetary Damages and Injunctive Relief

-25-

125. The defendants have knowingly and intentionally and willfully concealed known facts and misrepresented facts. The defendants actions constitute *intentional* misrepresentation and concealment of known facts and proximately caused Bridgewater harm and damage.

126.    Bridgewater have been harmed and damaged by the defendants actions and have damages.

127. Bridgewater is entitled to (compensatory/special/general/statutory/nominal) damages. The defendants acted with (fraud/malice/oppression/reckless disregard. Plaintiff is thus entitled to punitive damages against the defendants subject to net worth of said defendants pursuant CCP § 3294 ( c )

128. Bridgewater have compensatory damages in the amount of $100.00.(one hundred)

129. Plaintiff request an award of punitive damages in the amount of one million dollars.($1,000,000.00)

## SEVENTH CLAIM FOR RELIEF
## FOR
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## AGAINST ALL DEFENDANTS and Does 1 through 50 inclusive.

130.    All preceding paragraphs are hereby incorporated by reference as if fully set forth herein. The defendants conduct was outrageous.

131.    The defendants intended to and, willfully, knowingly and intended to cause and inflict

Verified Complaint for Monetary Damages and Injunctive Relief

emotional distress on the Plaintiff.

132.   The Defendants intentionally inflicted severe emotional distress by was of extreme and outrageous conduct on Plaintiff.  The defendants committed criminal acts of fraud, force, threat and coercion.

133.   The defendants set the conditions, directly, facilitated, confirmed, ratified and inflicted emotional distress on Plaintiff.

134.   The defendants conduct constitutes intentional infliction of emotional distress and proximately caused Bridgewater injuries and damages.

135.   Bridgewater have been injured and damaged and have damages.

136.   Bridgewater is entitled to (compensatory/special/general/statutory/nominal) damages.

137.   The defendants acted with (fraud/malice/oppression/reckless disregard).  Plaintiff is thus entitled to punitive damages against the defendants subject to net worth of said defendants pursuant CCP § 3294 ( c ) Bridgewater have compensatory damages in the amount of $100.00.(one hundred)

138.   Plaintiff request an award of punitive damages in the amount five million dollars.($5,000,000.000.00).

## EIGHTH CLAIM FOR RELIEF

### FOR
### NEGLIENT INFLICTION OF EMOTIONAL DISTRESS
### AGAINST ALL DEFENDANTS and Does 1 through 50 inclusive

139.   All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

Verified Complaint for Monetary Damages and Injunctive Relief

-27-

The defendants had a duty of care toward Bridgewater. The defendants acted

intentionally, knowingly and willfully.

140. Bridgewater finally after many years of being on disability and on public assistance was

on the verge of complete rehabilitation, and being totally financial independent and free

of receiving any assistance from the government obtained a Bachelor degree from the was

working on the completion her graduate degree.

141. Bridgewater had started a business, when the defendants committed fraudulent acts to

gain possession of her apartment causing her to relapse back into total disability.

142. The defendants conduct caused Bridgewater to suffer serious emotional distress.

Defendants had total disregard for the Plaintiff welfare. Plaintiff was a "direct victim"

which arose from the defending violations of obtaining a VOID Stipulated Judgment.

Plaintiff has suffered serious emotional distress.

143. The defendant's actions cause of the Plaintiff serious emotional distress. The outrageous

and extreme conduct by the defendants goes beyond bounds of common human

decency.

144. An ordinary, reasonable person would not be unable to cope with it. Emotional distress

includes suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock,

humiliation, and shame.

145. Plaintiff has suffered "serious, extreme" emotional distress, by **"unexpectly"** having to

**move in and out of apartment, both second story floors with a one month time frame**

**within a three week time frame.** by **breaking her foot which has resulted in a**

**permanent injury and a (right leg impairment) for life**.

Verified Complaint for Monetary Damages and Injunctive Relief

-28-

146. Once Bridgewater found an apartment after being evicted during Christmas the defendants

tortuously interred with Bridgewater hud payments by not releasing them to the new

apartment, then once Bridgewater moved back into hayes valley committed criminal acts of

fraud, force, coercion to force Bridgewater out again.

out again.

147. This is extreme outrageous, goes beyond all human decency

Plaintiff has suffered "serious, extreme" emotional distress of once having moved back

148. Plaintiff has suffered "serious, extreme" emotional distress by having to relocate to

another State and having to relocate back to California; Plaintiff has been unable to obtain

housing because her name is in a unlawful detainer data base for non-payment of rent for

the wrongful eviction of the defendants "kicking" Plaintiff out of her apartment pending

Christmas 2007/New Year 2008 holiday season.

149. Plaintiff has lived in countless homeless shelters since the incident. Being placed in

homeless situations and having lost of dignity, low self esteem and lack of worthiness

and shame.

150. Plaintiff has suffered from severe emotional trauma, constantly is nervousness, scared

and live in fear that someone will evict her at any time.

151. Plaintiff is constantly worried and suffers constant anxiety.


152. Defendants acts were done negligently as defendants Hayes Valley Limited Partnership,

operate housing units for the disabled and as such defendants know that the tenants have

vulnerability to illegal acts. The defendants took complete advantage of Bridgewater

inability to retain legal counsel.

Verified Complaint for Monetary Damages and Injunctive Relief

-29-

153. The defendants knew that people such as Bridgewater have the inability to enforce there

rights and would be unable to adequately cope with the mental stress engendered by the

totality of the Circumstance.

154. The defendants have committed negligent infliction of emotional distress. *actions constitute negligent infliction of emotional distress*

155. The defendant's actions are the direct and proximate cause of Bridgewater's

Damages and harm. *Bridgewater have been damaged by the defendants conduct & have damages.*

156. Bridgewater is entitled to (compensatory/special/general/statutory/nominal) damages.

157. The defendants acted with (fraud/malice/oppression/reckless disregard).

158. Plaintiff is thus entitled to punitive damages against the defendants subject to net worth of

said defendants  pursuant CCP § 3294 ( c )

159. Bridgewater has compensatory damages in the amount of $100.00. (One hundred)

160. Plaintiff request an award of punitive damages in the amount an amount not to

Five million dollars.($5,000,000.000.00)

**WHEREFORE, plaintiff demands Judgment against the defendants**

1. First Claim of relief for common law Malicious Prosecution for compensatory

damages in the amount of  $100.00 and an request an award of punative damages

in the amount of (10)ten million dollars.

2. Second Claim relief for Wrongful Eviction has already been tried in a court of

law(trier of the fact) and the Plaintiff received a vacated Judgment for Wrongful

Verified Complaint for Monetary Damages and Injunctive Relief

–30–

Eviction. Plaintiff have compensatory damages in the amount of $5,000.00 and request punitive damages in the amount of two (2,000,000.00) million dollars.

3.   Third Claim of relief for conspiracy for Compensatory damages in the amount of $100.00 a request an award of punative damages in the amount (1)one million dollars.

4.   Forth Claim of relief for deprivation of Plaintiff right to a jury trial(US Constitution 7th amendment right) for compensatory damages in the amount of $100.00 request an award of punative damages in the amount(10) ten million dollars.

5.   fifth Claim of relief for Retaility Eviction for compensatory damages in the amount of $100.00 and request an award of punative damages in the amount (5)five million dollars.

6.   Sixth Claim of relief for Misrepresentation and Concealment of known facts for compensatory damages in the amount of $100.00 request an award of punative damages in the amount of (1)one million dollars.

7. Seventh Claim of relief for Intentional Infliction of Emotional Distress for compensatory damages in the amount of $100.00 and request an award of punative damages in the amount (5)five million dollars.

8. Eighth Claim of relief for Negligent Infliction of Emotional Distress for Compensatory damages in the amount of $100.00 request an award of punative damages in the amount (5)five million dollars.

Verified Complaint for Monetary Damages and Injunctive Relief

9.  Plaintiff also prays for Injunction relief:

   (a)Plaintiffs have a reasonable probability of success on the merits.

      [Is the prevailing party]

   (b) There is a danger of real, immediate, and irreparable injury which may be

      prevented by injunctive relief;

   (c) There is no other plain, speedy, and adequate remedy at law;

   (d) The granting of a preliminary injunction will not disserve the public interest;

   (e) The balance of equities favors the injunction; and

   (f) The injunction will preserve the status quo pending a trial on the merits.


10.  To avoid further irreparable injury, Plaintiffs request that the Court issue a TRO

    /Preliminary Asset Freeze (Property/Cash) in the amount of the Judgment entered

    and rendered against the defendant.

11. For the asset freeze to continue until the defendants post a Bond in the amount of

   $ 37,000,900.00 _____ (million) or an amount to be determined by this

   court to preserve the status quo.

12.  For immediate Injunctive relief/Partial Judgment against the defendants that

    defendants for the second claim of relief for wrongful eviction in the amount of

    $2,005,000.00(two million five thousand dollars) or an amount determined by

    the court as this claim has already been (trier of the fact) tried in a court of law

    and the defendants are guilty for wrongful eviction.  Plaintiff request the court to

    enter and order, ordering the defendants to deposit these funds into the court.


Verified Complaint for Monetary Damages and Injunctive Relief

And for the court to [immediately] (federal express next day delivery/certified/or first class mail)send the check to Plaintiff.

13. A permanent Injunction-Order the defendants to pay the amount of Judgment rendered by this court and dissolve the asset freeze after payment.

14. Expedite discovery

15. To consolidate Preliminary injunction hearing with the trial on merits.

16. For an order enjoining the defendants, each of them, and their Agents, Servants, employees and all persons acting under, in concert with them.

17. Assume jurisdiction of this case.

18. An order for defendants to produced sensitive financial and net worth Information to assess punitive damages Alternatively, Bridgewater respectfully requests this Court restrict the documents to be produced to those that represents he present net worth of the defendants.

19. For cost of suit herein incurred and attorney fees.

20. Plaintiff request an expedited Preliminary Injunction hearing.

21. Hold each defendant jointly and severally liable.

22.  Hold each defendant jointly and severally liable for concert of action.

23.  For any other further relief as the court may deem proper and just.

Respectfully submitted,



Sharon Bridgewater

Dated: Nov. 30, 2009

Verified Complaint for Monetary Damages and Injunctive Relief

-34-

# VERIFICATION

I Sharon Bridgewater Declare:

I am the Plaintiff in the above entitled action.

I make this verification because the facts set forth in the complaint are within my

knowledge and it is I who was evicted in the underlining

unlawful detainer.

I have read the foregoing complaint and know the contents thereof. The same is true of

my own knowledge. I except as to those matters which are therein alleged on information

and belief, and as to those matters, I believe it to be true.

I Sharon Bridgewater declare under penalty of perjury under the laws of the State of

California that the foregoing is true and correct.


Dated:  Nov. _30_ , 2009


At San Francisco, California




Sharon Bridgewater


Verified Complaint for Monetary Damages and Injunctive Relief

# EXHIBIT 1

1  KIMBALL, TIREY & ST. JOHN, LLP
   Jane L. Creason Bar No. 189094
2  5994 W. Las Positas Blvd., Suite 219
   (800) 525-1690
3  (800) 281-1911 (fax)

4  Attorney for Plaintiff
   HAYES VALLEY LIMITED PARTNERSHIP
5

**FILED**
SUPERIOR COURT
COUNTY OF SAN FRANCISCO

FEB 1 9 2008

GORDON PARK-LI, Clerk
BY: _____
              Deputy Clerk

6      SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO
7

8

9  HAYES VALLEY LIMITED PARTNERSHIP       )   Case No.: CUD-06-617995
                                          )
10              Plaintiff,                )   STIPULATION FOR ENTRY OF JUDGMENT
                                          )   AND ORDER THEREON
11      Vs.                               )
                                          )
12  SHARON BRIDGEWATER                    )
                                          )
13              Defendant                 )
                                          )
14  DOES 1 TO 10 INCLUSIVE                )
                                          )
15                                        )
16

17

18      IT IS SO STIPULATED by and between the parties hereto through Plaintiff's counsel,

19  KIMBALL, TIREY & ST. JOHN; Plaintiff, HAYES VALLEY LIMITED PARTNERSHIP,

20  and Defendant, SHARON BRIDGEWATER, that judgment in the above-entitled will be entered

21  as follows should Defendant fail to comply with any of the terms stated herein:

22      1.   Plaintiff to receive possession of the premises located at 427 PAGE STREET,

23  San Francisco, CA, 94102 on ~~March 17~~ *April 30*, 2008. A Writ of Possession for said premises may

24  issue immediately if Defendant has not restored possession to Plaintiff by vacating said

25  premises on or before ~~March 17~~ *April 30*, 2008 by the close of business at 6:00 p.m.

26      2.   The parties further agree that in exchange for Defendant moving out by ~~April 8, 2008~~ *April 30*,

27  Plaintiff will waive all of the past due rent in the amount of $2,124.74.

1

3.      Plaintiff waives $450 attorneys' fees and $405 in costs.

4.      The rental agreement/lease under which Defendant holds possession of said property is forfeited on ~~March 17~~, 2008. *April 30*

5.      Defendant SHARON BRIDGEWATER expressly waives any and all rights to a noticed motion and/or right to a hearing on the entry of a judgment pursuant to this stipulation.

6.      Defendant SHARON BRIDGEWATER expressly agrees to leave the premises in good repair and clean condition according to California law.

7.      Plaintiff shall return Defendant's security deposit in ~~the amount of $600.00 in exchange for keys on March 17, 2008.~~ *accordance with California law.*

8.      Defendant SHARON BRIDGEWATER and any others in possession will move out ~~March 17~~, 2008 by 6:00 p.m. *April 30*

9.      If Defendant fails to comply with any of the terms as herein stated, judgment shall enter for possession and the full amount of past due rent, attorneys' fees and costs. A writ of execution for money and possession shall issue immediately upon Declaration by Plaintiff's counsel if Defendant fails to comply with this stipulation. Judgment for possession shall be entered pursuant to CCP 415.46 as to any and all occupants.

10.     In the event of non-compliance, Plaintiff shall give 24-hour telephonic notice to the defendant at the following phone number:  415·401·5573

11.     This stipulation shall be dispositive of all issues raised in Plaintiff's Complaint and all affirmative defenses which could have been raised in Defendant's Answer, ~~and shall be considered res judicata in any further proceeding initiated by either party.~~

12.     It is further stipulated that facsimile signatures shall be deemed originals, per California Rules of Court, Rule 2.305 (d) and that this Stipulation may be executed in

counterparts as circumstances require and shall be deemed fully enforceable upon execution
of all parties hereto.

13.     In the future, Plaintiff will give only a neutral reference as to dates of occupancy
and rental amount.

14.     Each signatory hereto represents that they have the express authority from the
party they represent to sign for and bind that party to the terms herein.

15. Defendant reserve the right to sue in the further and do not give up all claims pertaining to further law suits

Dated: _2/19/08_

Defendant- SHARON BRIDGEWATER

Dated: _2/19/08_

Plaintiff- HAYES VALLEY LIMITED PARTNERSHIP
By: _____
Authorized Agent for Plaintiff

Dated: _2/19/08_

KIMBALL, TIREY & ST. JOHN, LLP
Attorneys for Plaintiff
By: Jane Creason

**ORDER**

IT IS SO ORDERED.

Dated: _2-19-08_

Judge Pro Tem

_____
JUDGE/COMMISSIONER OF THE SUPERIOR COURT

3

# EXHIBIT 2

# SEPARATE STATEMENT OF UNDISPUTED FACTS

### UNDISPUTED FACTS

### PROOF OF FACTS

1)  Attorney Shawn Bankson on behalf
Defendants Hayes Valley Limited Partnership
Signed the verification of the unlawful detainer
In case No. 617995 alleging a cause of action for
Eviction for non-payment of rent for the period
Of time from 9/1/2005 to 3/31/2006 for possession
Of the premises of 427 Page St. San Francisco
California. *under penalty of perjury*

1)                    Judicial Notice
pursuant to Evidence Code
of the unlawful detainer in case No.
617995, see Exhibit( 1   )
Attorney Shawn Bankson signed the
unlawful detainer seeking possession
of the premises commonly known as
427 Page Street San Francisco,
California.

2)  The defendants issued a
"Five Day Notice to Pay Rent or Quit "
In violation of CCP 1161 with no "exact
Dollar amount due". *NEVER MET THE STATUTORY*
*✗ Requirement to file an unlawful detainer*

2)                    Judicial Notice
and Exhibit(2)

3)  The defendants issued a second
"Five Day Notice to Pay Rent or Quit"
Date **Nov. 12, 2007** – with no "exact
Dollar amount due in violation of 1161
*✗ Never met the statutory requirement to file*
*an unlawful detainer*

3)                    Judicial Notice
and Exhibit( 3 )

4)  The defendants received
rent payments of $207.00, which was
accepted by Hayes Valley Limited
Partnership on June 13, 2006, and another
Rent payment on July 10, 2006 of $207,
Aug. 23, 2006, $207.00, Sept 15, 2006,
207.00, Oct. 18., 2006, $207, Nov. 21, 2006,
$207.00, Dec. 15, 2006, $207. Feb. 13, 2007,
$414.00, March 28, 2007, 207.00, June 11, 2007,
$414.00, all of these payments were accepted by
Hayes Valley Limited Partnership for rent payments
for rental unit commonly known 427 Page Street,
San Francisco, California making total rental
Payments made and accepted after the Five Day
Notice to pay rent or quit of **$2,484.00.**

3)  Copy of Rental Ledger for 427 Page
    Street, San Francisco for Sharon
    Bridgewater's unit showing and
    proving rental payment in excess of
    that what was demanded in the five
    day notice to pay rent or quit dated
    April 12, 2006 in the amount of
    **$749.00**, see Exhibit( 1  )and Exhibit
    ( 4 ) Rental Ledger for 427 Page St.
    San Francisco, California showing
    rents paid and accepted after the
    filing of the unlawful detainer.

5)  Plaintiff  gave Bridgewater
Second notice to pay rent or quit dated
November 12, 2007

5) Bridgewater had credit balances on
her rental ledger

See Copy of Rental ledger
Exhibit ( 4 )

6)  A writ for possession of Bridgewater
Premises was received on **X-MAS eve
Dec. 24, 2007**, preceeding a Judgment
For possession of premises the defendants
Received on Dec. 19, 2007.

6)  Request for Judicial Notice dated
    and Exhibit (5)(6)
    5 6

Facts

✗ ALL EXHIBITS ARE ATTACHED IN ORDER

(2)

| **UNDISPUTED FACTS** | **PROOF OF FACTS** |
|---|---|
| 7) Bridgewater received a **vacated Judgment** \*\*\*<br>Of possession of premises on<br>Jan. 22, 2208 | 7) Request for Judicial Notice dated<br>and Exhibit ( *7*) |
| 8) **Bridgewater became the prevailing party**<br>In case **CUD-06-617995** | \*\*\*  8) Defendant never amended the<br>complaint nor did the defendant<br>**DISMISS THE UNLAWFUL<br>DETAINER LAWSUIT<br>CUD-06-617995** |

## *FRAUD*

STIPULATEd JUdgment(Void)          see exhibit-8

| | |
|---|---|
| 9) On the very day set for trial the attorneys<br>Shawn Bankson, Jane Creason and the law firm<br>Kimball, Tirey & St. John, LLP conspired with<br>Defendants Hayes Valley Limited Partnership<br>to proceed with an eviction against plaintiff<br>Sharon Bridgewater even through all the<br>Evidence proved that Hayes Valley Limited<br>Partnership had accepted all the rental payments<br>From plaintiff Bridgewater for the time period<br>in question. | 9) The rental ledger shows and proves<br>that all rents for the period demanded<br>in the unlawful detainer were in fact<br>paid and accepted by Hayes Valley<br>Limited Partnership which prevented<br>any eviction against plaintiff<br>Bridgewater and irrespective of said<br>knowledge which must imputed to<br>attorneys as the only element of the<br>Unlawful detainer for non-payment<br>requires testimony from the keeper<br>the rental payment history for<br>apartment 427 Page Street, San<br>San Francisco, California which<br>shows all rental payments were<br>accepted and no balance was due,<br>as such by operation of law no<br>Stipulated Judgment for possession<br>premises could have been<br>entertained by the Court. |
| 10)Attorneys Shawn Bankson, Jane<br>Creason and the law firm of  Kimball,<br>Tirey & St. John, LLP owes a duty of<br>good faith and honorable dealings to | 10) California B. & P Code § 6068 Subd (b)<br>that Attorneys are obligated by oath to give<br>due respect for the Courts and it is a crime to<br>utilize deceit or collusion with intend to |

the judicial tribunals before whom he practices his profession and defendant attorneys in this case violates their oath of office when they restored to deception in the unlawful detainer case at the request of their clients Hayes Valley Limited Partnership to proceed with the eviction when the all rental payments demanded in the unlawful detainer were in fact paid. These Attorneys Shawn Bankson, Jane Creason and the law firm of Kimball, Tirey & St. John, LLP then in furtherance of the request of their clients still proceeded prosecute the unlawful detainer by deceiving not only plaintiff Bridgewater, but also this Court, in violation of B & P Code § 6128 (a) which is a criminal violation of California Law for an attorney to do so.

deceive any party or judge or judicial officer by an artifice or false statement of fact or law, California B & P Code § 6128 Subd. (a). In this case at the Settlement conference Feb. 19, 2008, Attorney Jane Creason on behalf of their clients misused the court so that Hayes Valley Limited Partnership could obtain plaintiff apartment even through by operation of law no Judgment could have gone forward and no as all rental payments as demanded in the compiaint for unlawful detainer were in fact paid and accepted by Hayes Valley Limited to Partnership. Attorneys Shawn Bankson, Jane Creason and law firm of Kimball, Tirey & St. John agreed to utilize deceit and collusion with the intent to deceive not only Plaintiff Bridgewater, but also the Court by artifice and false statement of fact and law, and done at the request of Hayes Valley Limited Partnership and by ratifying said Request this is civil conspiracy as the unlawful detainer could not have proceed as plaintiff was entitled to a judgment as a matter of law as the rental amount as demanded in the complaint was paid and accepted by Hayes Valley Limited Partnership. This was done on the very date Set for trial date which the attorneys in question in preparing for trial knew at all times that all rental payments were accepted for the amount demanded in the Notice to pay rent or quit and still proceeded in evicting plaintiff Bridgewater, see Exh.(9)

11) Defendant law firm Kimball, Tirey & St. John holds themselves out as specialists in Unlawful detainers and at all times knew that acceptance of rental payments by the landlord requires dismissal of the unlawful detainer.

11) The Web Site of Kimball, Tirey & St. John lists that the said law firm holds themselves out as specializing in unlawful detainers on behalf of the landlords and in fact attorney Jane Creason wrote an article Entitle "What you should Know: Evictions the Right to a Jury Trial, see Exhibit (Q, last ¶ ).

12) Plaintiff was at all times mentioned herein
as a defendant in an unlawful detainer for
non-payment of rent was entitled to a dismissal
of the complaint by operation of law, to wit that
all rental payments demanded in the unlawful
detainer were made. These attorneys at all times
had a duty not to deceive either plaintiff or the
the court about the acceptance of the rental payments.

12) Exhibit(6), shows that defendants atty
hold themselfs out to the Public as being a
experts in bring Unlawful detainers
and at all times mentioned herein
knew that acceptance of rental payments
after service of a notice to pay rent quit
prevents any further proceedings on the
Unlawful detainer and which is codified
under B & P Code § 6068 (d) and
6128 (a) and Rule 3-200 (a) & (b)
and California Rules of Professional
Rule 5-200 (a) & (b) which places a
Duty on opposition legal counsel in
this Case.

Dec. 1

Dated: ⸱⸱   __  __, 2009

_____
Sharon Bridgewater

Facts



**UD-100**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| SHAWN BANKSON<br>SHAWN BANKSON, BAR #223638<br>KIMBALL, TIREY & ST. JOHN<br>5994 W. LAS POSITAS BOULEVARD #219<br>PLEASANTON, CA 94588<br>TELEPHONE NO.: 800-525-1690    FAX NO. *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: PLAINTIFF | **FILED**<br>San Francisco County Superior Court<br><br>APR 2 4 2006<br><br>GORDON PARK-LI, Clerk<br>BY: *Deborah Steppe*<br>DEBORAH STEPPE, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
STREET ADDRESS: COUNTY OF SAN FRANCISCO
MAILING ADDRESS: 400 McAllister, 1st Floor
CITY AND ZIP CODE: San Francisco, California 94102
BRANCH NAME: Limited Civil Jurisdiction

PLAINTIFF: HAYES VALLEY LIMITED PARTNERSHIP

DEFENDANT: SHARON BRIDGEWATER

[X] DOES 1 TO 10 INCLUSIVE

| COMPLAINT — UNLAWFUL DETAINER* | CASE NUMBER: |
|---|---|
| [X] COMPLAINT   [ ] AMENDED COMPLAINT *(Amendment Number)*: | CUD-06 617995 |

**Jurisdiction** *(check all that apply)*:

[X] ACTION IS A LIMITED CIVIL CASE
   Amount demanded   [X] does not exceed $10,000
               [ ] exceeds $10,000 but does not exceed $25,000
[ ] ACTION IS AN UNLIMITED CIVIL CASE (amount demanded exceeds $25,000)
[ ] ACTION IS RECLASSIFIED by this amended complaint or cross-complaint *(check all that apply)*:
     [ ] from unlawful detainer to general unlimited civil (possession not in issue)    [ ] from limited to unlimited
     [ ] from unlawful detainer to general limited civil (possession not in issue)    [ ] from unlimited to limited

1. PLAINTIFF *(name each)*: HAYES VALLEY LIMITED PARTNERSHIP

alleges causes of action against DEFENDANT *(name each)*: SHARON BRIDGEWATER

2. a. Plaintiff is   (1) [ ] an individual over the age of 18 years.    (4) [ ] a partnership.
             (2) [ ] a public agency.                (5) [ ] a corporation.
             (3) [X] other *(specify)*: LIMITED PARTNERSHIP

   b. [ ] Plaintiff has complied with the fictitious business name laws and is doing business under the fictitious name of *(specify)*:

3. Defendant named above is in possession of the premises located at *(street address, apt. no., city, zip code, and county)*:
   427 PAGE STREET, SAN FRANCISCO, SAN FRANCISCO COUNTY, CA 94102

4. Plaintiff's interest in the premises is   [X] as owner   [ ] other *(specify)*:
5. The true names and capacities of defendants sued as Does are unknown to plaintiff.
6. a. On or about *(date)*: 1/3/2005          defendant *(name each)*: SHARON BRIDGEWATER

     (1) agreed to rent the premises as a   [ ] month-to-month tenancy   [X] other tenancy *(specify)*: 1 YEAR
     (2) agreed to pay rent of $ 107.00   payable   [X] monthly   [ ] other *(specify frequency)*:
     (3) agreed to pay rent on the   [X] first of the month   [ ] other day *(specify)*:
   b. This [X] written   [ ] oral   agreement was made with
     (1) [ ] plaintiff.                 (3) [ ] plaintiff's predecessor in interest.
     (2) [X] plaintiff's agent.         (4) [ ] other *(specify)*:

*NOTE: Do not use this form for evictions after sale (Code Civ. Proc., § 1161a).

Page 1 of 3

| Form Approved for Optional Use<br>Judicial Council of California<br>UD-100 [Rev. July 1, 2005] | COMPLAINT—UNLAWFUL DETAINER | Legal<br>Solutions<br> Plus | Civil Code, § 1940 et seq.<br>Code of Civil Procedure §§ 425.12, 1166 |
|---|---|---|---|

(1)

| PLAINTIFF *(Name)*:   HAYES VALLEY LIMITED PARTNERSHIP | CASE NUMBER: |
|---|---|
| DEFENDANT *(Name)*:  SHARON BRIDGEWATER | |

6. c. [X] The defendants not named in item 6a are
    (1) [ ] subtenants.
    (2) [ ] assignees.
    (3) [x] other *(specify)*:  UNKNOWN

  d. [ ] The agreement was later changed as follows *(specify)*:

  e. [ ] A copy of the written agreement, including any addenda or attachments that form the basis of this complaint, is attached and labeled Exhibit 1. *(Required for residential property, unless item 6f is checked. See Code Civ. Proc., § 1166.)*
  f. [X] *(For residential property)* A copy of the written agreement is not attached because *(specify reason)*:
    (1) [ ] the written agreement is not in the possession of the landlord or the landlord's employees or agents.
    (2) [X] this action is solely for nonpayment of rent (Code Civ. Proc., § 1161(2)).

7. [X] a. Defendant *(name each)*:  SHARON BRIDGEWATER

    was served the following notice on the same date and in the same manner:
    (1) [ ] 3-day notice to pay rent or quit    (4) [ ] 3-day notice to perform covenants or quit
    (2) [ ] 30-day notice to quit    (5) [ ] 3-day notice to quit
    (3) [ ] 60-day notice to quit    (6) [X] Other *(specify)*: 5 DAY PAY/QUIT
  b. (1) On *(date)*:  4/17/2006    the period stated in the notice expired at the end of the day.
    (2) Defendants failed to comply with the requirements of the notice by that date.
  c. All facts stated in the notice are true.
  d. [X] The notice included an election of forfeiture.
  e. [X] A copy of the notice is attached and labeled Exhibit 2. *(Required for residential property. See Code Civ. Proc., § 1166.)*
  f. [ ] One or more defendants were served (1) with a different notice, (2) on a different date, or (3) in a different manner, as stated in Attachment 8c. *(Check item 8c and attach a statement providing the information required by items 7a–e and 8 for each defendant.)*

8. a. [X] The notice in item 7a was served on the defendant named in item 7a as follows:
    (1) [X] by personally handing a copy to defendant on *(date)*: 4/12/2006
    (2) [ ] by leaving a copy with *(name or description)*:
      a person of suitable age and discretion, on *(date)*:    at defendant's
      [ ] residence · [ ] business  AND mailing a copy to defendant at defendant's place of residence on *(date)*:    because defendant cannot be found at defendant's residence or usual place of business.
    (3) [ ] by posting a copy on the premises on *(date)*:    [ ] AND giving a copy to a person found residing at the premises AND mailing a copy to defendant at the premises on *(date)*:
      (a) [ ] because defendant's residence and usual place of business cannot be ascertained OR
      (b) [ ] because no person of suitable age or discretion can be found there.
    (4) [ ] *(Not for 3-day notice; see Civil Code, § 1946 before using)* by sending a copy by certified or registered mail addressed to defendant on *(date)*:
    (5) [ ] *(Not for residential tenancies; see Civil Code, § 1953 before using)* in the manner specified in a written commercial lease between the parties.
  b. [ ] *(Name)*:
    was served on behalf of all defendants who signed a joint written rental agreement.
  c. [ ] Information about service of notice on the defendants alleged in item 7f is stated in Attachment 8c.
  d. [ ] Proof of service of the notice in item 7a is attached and labeled Exhibit 3.

| PLAINTIFF (Name): HAYES VALL... LIMITED PARTNERSHIP | CASE NUMBER: |
|---|---|
| DEFENDANT (Name): SHARON BRIDGEWATER | |

9. ☐ Plaintiff demands possession from each defendant because of expiration of a fixed-term lease.
10. ☒ At the time the 3-day notice to pay rent or quit was served, the amount of rent due was $ 749.00
11. ☒ The fair rental value of the premises is $ 3.51 per day.
12. ☐ Defendant's continued possession is malicious, and plaintiff is entitled to statutory damages under Code of Civil Procedure
   section 1174(b). *(State specific facts supporting a claim up to $600 in Attachment 12.)*
13. ☒ A written agreement between the parties provides for attorney fees.
14. ☐ Defendant's tenancy is subject to the local rent control or eviction control ordinance of *(city or county, title of ordinance,
   and date of passage):*

   Plaintiff has met all applicable requirements of the ordinances.
15. ☒ Other allegations are stated in Attachment 15.
16. Plaintiff accepts the jurisdictional limit, if any, of the court.
17. PLAINTIFF REQUESTS
   a. possession of the premises.
   b. costs incurred in this proceeding:
   c. ☒ past-due rent of $ 749.00
   d. ☒ reasonable attorney fees.
   e. ☒ forfeiture of the agreement.
   f. ☒ damages at the rate stated in item 11 from
      *(date):* 4/1/2006                for each day that
      defendants remain in possession through entry of judgment.
   g. ☐ statutory damages up to $600 for the conduct alleged in
      item 12.
   h. ☐ other *(specify):*

18. ☒ Number of pages attached *(specify):* FOUR

### UNLAWFUL DETAINER ASSISTANT (Bus. & Prof. Code, §§ 6400–6415)

19. *(Complete in all cases.)* An unlawful detainer assistant    ☒ did not    ☐ did    for compensation give advice or assistance
   with this form. *(If plaintiff has received any help or advice for pay from an unlawful detainer assistant, state):*

   a. Assistant's name:
   b. Street address, city, and zip code:
   c. Telephone No.:
   d. County of registration:
   e. Registration No.:
   f. Expires on *(date):*

Date: 4/20/2006

SHAWN BANKSON
_____
(TYPE OR PRINT NAME)                                  ► _____
                                                        (SIGNATURE OF PLAINTIFF OR ATTORNEY)

### VERIFICATION

*(Use a different verification form if the verification is by an attorney or for a corporation or partnership.)*
I am the plaintiff in this proceeding and have read this complaint. I declare under penalty of perjury under the laws of the State of
California that the foregoing is true and correct.

Date:

_____                        ► _____
(TYPE OR PRINT NAME)                                     (SIGNATURE OF PLAINTIFF)

## VERIFICATION

I, the undersigned, say;

That I am the attorney for Plaintiff in this action; the Plaintiff is absent from the County of Alameda, California, where I have my office, and I make this verification for and on behalf of the party for that reason; and, it is impractical to obtain the signature of the Plaintiff in that this is a summary proceeding, and time of the essence in this matter. I read the above Complaint for Unlawful Detainer and know it contents. I am informed and believe, and on those grounds, allege that the matters stated in it are true.

Executed on April 20, 2006 at Pleasanton, California. I declare under penalty of perjury that the foregoing is true and correct.

KIMBALL, TIREY & ST. JOHN

Attorney for Plaintiff

By: SHAWN K. BANKSON

DECLARATION - 1

Apr 17 06 08:56a     Hayes Valley Apartments     415-487-1830          p.3

*Hayes Valley Apartm*(
401 Rose Street
San Francisco, CA 94102
*Phone* 415-487-1218
  *Fax* 415-487-1834

## NOTICE TO PAY RENT OR QUIT

To:     Sharon Bridgewater AND ALL OTHERS IN POSSESSION:

WITHIN FIVE DAYS, after the service on you of this notice, you are herby required to
pay the delinquent rent of the premises herein after described, of which you now hold
possession as follows:

| | | | | | | |
|---|---|---|---|---|---|---|
| $107.00 | FROM | SEPTEMBER | 1, 2005 | THROUGH | SEPTEMBER | 30, 2005 |
| $107.00 | FROM | OCTOBER | 1, 2005 | THROUGH | OCTOBER | 31, 2005 |
| $107.00 | FROM | NOVEMBER | 1, 2005 | THROUGH | NOVEMBER | 30, 2005 |
| $107.00 | FROM | DECEMBER | 1, 2005 | THROUGH | DECEMBER | 31, 2005 |
| $107.00 | FROM | JANUARY | 1, 2006 | THROUGH | JANUARY | 31, 2006 |
| $107.00 | FROM | FEBRUARY | 1, 2006 | THROUGH | FEBRUARY | 28, 2006 |
| $107.00 | FROM | MARCH | 1, 2006 | THROUGH | MARCH | 31, 2006 |

Or you are hereby required to deliver up possession of the hereinafter described
premises, with five days after service on you of the notice, to HAYES VALLEY
LIMITED PARTNERSHIP ("owner"), who/which is authorized to receive the same, or
legal proceedings will be instituted against you to declare the forfeiture of the lease or
rental agreement under which you occupy the herein below described property and to
recover possession of said premises, to recover all rent past due, to recover court cost,
attorney fees as permitted by law, and possible additional statutory damages of up to SIX
HUNDRED DOLLARS ($600.00) in accordance with California Code of Civil Procedure
Section 1174(b), as a result of your failure to comply with the terms of this notice.

The premises herein referred to is situated in the City of SAN FRANCISCO, County of
SAN FRANCISCO, State of California, designated by the number and street 427 Page
STREET.

You are further notified that should you fail to remit the above-demanded rent or
surrender possession of the above-described premises, the undersigned does elect to
declare the forfeiture of your lease or rental agreement under which you hold possession
of the above-described premises.

Payment must be made to the owner/agent at the following address:  401 ROSE STREET
SAN FRANCISCO, CA 94102

Telephone number for the above-address:     415-487-1218

Payments made in person shall be delivered to owner/agent between the hours 9:00 am-
4:00 pm on the following days of the week: Monday through Friday. Payments may also
be made by appointment only on Saturday and Sunday.

You may make such reply as you wish. You have the right to examine Lessor documents
directly relevant to the lease termination.

You have a right to a grievance hearing in this matter. You must within five (5) days meet
and discuss with the landlord this notice and the proposed termination of tenancy
Advice regarding this notice is available from the San Francisco Rent Stabilization and
Arbitration Board located at 25 Van Ness Street, Suite 320, San Francisco, CA 94102 on
Monday through Friday from 8:00 am 5:00 pm and via telephone at 425-252-4600.

Dated:        04/12/2006

By: _____ -TEMP RECEPTIONIST
For:     Property Manager, Hasinah Rahim
McCormack Baron Ragan for Hayes Valley Apartments

COPY

04/17/2006 MON 8:43 [TOB NO. 8694]  2006
EXHIBIT

**Hayes Valley Apartment**
401 Rose Street
San Francisco, CA 94102

Phone 415-487-1218
Fax 415- 487-1834

## NOTICE TO PAY RENT OR QUIT

To: Sharon Bridgewater

AND ALL OTHERS IN POSSESSION:

WITHIN FIVE DAYS, after the service on you of this notice, you are herby required to pay the delinquent rent of the premises herein after described, of which you now hold possession as follows:

| $78.00 | From | November 1, 2007 | Through | November 30, 2007 |
| $78.00 | From | October 1, 2007 | Through | October 31, 2007 |
| $78.00 | From | September 1, 2007 | Through | September 30, 2007 |
| $78.00 | From | August 1, 2007 | Through | August 31, 2007 |
| $78.00 | From | July 1, 2007 | Through | July 31, 2007 |

Or you are hereby required to deliver up possession of the hereinafter described premises, with five days after service on you of the notice, to HAYES VALLEY LIMITED PARTNERSHIP ("owner"), who/which is authorized to receive the same, or legal proceedings will be instituted against you to declare the forfeiture of the lease or rental agreement under which you occupy the herein below described property and to recover possession of said premises, to recover all rent past due, to recover court cost, attorney fees as permitted by law, and possible additional statutory damages of up to SIX HUNDRED DOLLARS ( $600.00) in accordance with California Code of Civil Procedure Section 1174(b), as a result of your failure to comply with the terms of this notice.

The premises herein referred to is situated in the City of SAN FRANCISCO, County of SAN FRANCISCO, State of California, designated by the number and street as 656 Fell Street 94102

You are further notified that should you fail to remit the above-demanded rent or surrender possession of the above-described premises, the undersigned does elect to declare the forfeiture of your lease or rental agreement under which you hold possession of the above-described premises.

Payment must be made to the owner/agent at the following address: 401 ROSE STREET SAN FRANCISCO, CA 94102

Telephone number for the above-address:     415-487-1218

Payments made in person shall be delivered to owner/agent between the hours 9:00 am-4:00 pm on the following days of the week: Monday through Friday. Payments may also be made by appointment only on Saturday and Sunday.

2 of 2

You may make such reply as you wish. You have the right to examine Lessor documents directly relevant to the lease termination.

You have a right to a grievance hearing in this matter. You must within five (5) days meet and discuss with the landlord this notice and the proposed termination of tenancy Advice regarding this notice is available from the San Francisco Rent Stabilization and Arbitration Board located at 25 Van Ness Street, Suite 320, San Francisco, CA 94102 on Monday through Friday from 8:00 am 5:00 pm and via telephone at 425-252-4600.

Dated: November 12, 2007

By: _Hasinah Rahim_____

Hasinah Rahim, General Manager
McCormack Baron Ragan for Hayes Valley
Apartments

Ledger

# McCORMACK BARON RAGAN

Date : 12/8/2008

Page 1 of 3

## Resident Ledger (Non HAP)

| Code | t0016030 | | | | |
|---|---|---|---|---|---|
| Name | Sharon Bridgewater | Property | 0284 | Lease From | 10/24/2007 |
| Address | 427 Page Street | Unit | 08-427 | Lease To | 12/31/2007 |
| | | Status | Past | Move In | 1/6/2005 |
| City St. Zip | San Francisco, CA 94102 | Rent | 1600 | Move Out | 5/5/2008 |
| | | Phone(O)- | | Phone(H)- | |

| Date | Description | Charge | Payment | Balance | Chg/Rec |
|---|---|---|---|---|---|
| 1/6/2005 | Rent for 26 days | 89.74 | | 89.74 | |
| 1/6/2005 | Security Deposit | 1,527.00 | | 1,616.74 | 150236 |
| 1/28/2005 | chk# 08-077509838 | | 400.00 | 1,216.74 | 150238 |
| 1/28/2005 | chk# 98077809839 | | 400.00 | 816.74 | 145597 |
| 2/1/2005 | Rent (02/2005) | 107.00 | | 923.74 | 145598 |
| 2/4/2005 | chk# 53739390815 | | 107.00 | 816.74 | 161220 |
| 3/1/2005 | Rent (03/2005) | 107.00 | | 923.74 | 157187 |
| 4/1/2005 | Rent (04/2005) | 107.00 | | 1,030.74 | 188758 |
| 4/19/2005 | chk# 54116152816 | | 321.00 | 709.74 | 213260 |
| 5/1/2005 | Rent (05/2005) | 107.00 | | 816.74 | 216026 |
| 6/1/2005 | Rent (06/2005) | 107.00 | | 923.74 | 236772 |
| 7/1/2005 | Rent (07/2005) | 107.00 | | 1,030.74 | 259847 |
| 7/12/2005 | chk# 46233134552 | | 239.00 | 791.74 | 285443 |
| 8/1/2005 | Rent (08/2005) | 107.00 | | 898.74 | 283585 |
| 8/12/2005 | chk# 54475645323 | | 500.00 | 398.74 | 309934 |
| 8/34/2005 | Late Charge | 25.00 | | 423.74 | 310995 |
| 9/1/2005 | Rent (09/2005) | 107.00 | | 530.74 | 324140 |
| 9/13/2005 | Late Charge | 25.00 | | 555.74 | 335233 |
| 10/1/2005 | Rent (10/2005) | 107.00 | | 662.74 | 346011 |
| 10/11/2005 | chk# 57-39843512 | | 108.00 | 554.74 | 359354 |
| 10/24/2005 | Late Charge | 25.00 | | 579.74 | 357464 |
| 11/1/2005 | Rent (11/2005) | 107.00 | | 686.74 | 373007 |
| 12/1/2005 | Rent (12/2005) | 107.00 | | 793.74 | 384128 |
| 12/8/2005 | Late Charge | 25.00 | | 818.74 | 407086 |
| 1/1/2006 | Rent (01/2006) | 107.00 | | 925.74 | 418567 |
| 2/1/2006 | Rent (02/2006) | 107.00 | | 1,032.74 | 422195 |
| 2/10/2006 | Late Charge | 25.00 | | 1,057.74 | 455213 |
| 3/1/2006 | Rent (03/2006) | 107.00 | | 1,164.74 | 467069 |
| 4/1/2006 | Rent (04/2006) | 107.00 | | 1,271.74 | 477949 |
| 5/1/2006 | Rent (05/2006) | 107.00 | | 1,378.74 | 535781 |
| | | | | | 535783 |



Ledger

| Date | Description | Charges | Payments | Balance | Ref No. |
|---|---|---|---|---|---|
| 5/5/2006 | chk# 08-465925320 | | | | |
| 6/1/2006 | Rent (06/2006) | | 860.00 | 518.74 | 522357 |
| 6/9/2006 | Late Charge | 107.00 | | 525.74 | 550583 |
| 6/13/2006 | chk# 08-404049817 | 25.00 | | 650.74 | 561674 |
| 7/1/2006 | Rent (07/2006) | | 207.00 | 443.74 | 554636 |
| 7/10/2006 | chk# 08-528140489 | 107.00 | | 550.74 | 575039 |
| 8/1/2006 | Rent (08/2006) | | 207.00 | 343.74 | 577304 |
| 8/23/2006 | chk# 08-525478587 | 107.00 | | 450.74 | 600282 |
| 9/1/2006 | Rent (09/2006) | | 207.00 | 243.74 | 611679 |
| 9/6/2006 | Late Charge | 107.00 | | 350.74 | 626150 |
| 9/15/2006 | chk# 08-549863729 | 25.00 | | 375.74 | 635724 |
| 10/1/2006 | Rent (10/2006) | | 207.00 | 168.74 | 635321 |
| 10/9/2006 | Late Charge | 107.00 | | 275.74 | 650183 |
| 10/18/2006 | chk# 08-577660944 | 25.00 | | 300.74 | 662460 |
| 11/1/2006 | Rent (11/2006) | | 207.00 | 93.74 | 664103 |
| 11/10/2006 | Late Charge | 107.00 | | 200.74 | 676349 |
| 11/21/2006 | chk# 08-534078301 | 25.00 | | 225.74 | 689135 |
| 12/1/2006 | Rent (12/2006) | | 207.00 | 18.74 | 692008 |
| 12/12/2006 | Late Charge | 107.00 | | 125.74 | 701828 |
| 12/15/2006 | chk# 08-577661584 | 25.00 | | 150.74 | 718658 |
| 1/1/2007 | Rent (01/2007) | | 207.00 | (56.26) | 717352 |
| 1/11/2007 | Late Charge | 107.00 | | 50.74 | 732987 |
| 2/1/2007 | Rent (02/2007) | 25.00 | | 75.74 | 746339 |
| 2/9/2007 | Late Charge | 107.00 | | 182.74 | 760558 |
| 2/13/2007 | chk# 56577201582 | 25.00 | | 207.74 | 772147 |
| 3/1/2007 | Rent (03/2007) | | 414.00 | (206.26) | 770280 |
| 3/8/2007 | chk# 08-669077082 | 107.00 | | (99.26) | 784554 |
| 4/1/2007 | Rent (04/2007) | | 207.00 | (306.26) | 801336 |
| 5/1/2007 | Rent (05/2007) | 107.00 | | (199.26) | 811254 |
| 5/10/2007 | Late Charge | 107.00 | | (92.26) | 837297 |
| 6/1/2007 | Rent (06/2007) | 25.00 | | (67.26) | 849698 |
| /2007 | Late Charge | 107.00 | | 39.74 | 862184 |
| /2007 | chk# 08-703197231 | 25.00 | | 64.74 | 873801 |
| /2007 | chk# 08-703197230 | | 207.00 | (142.26) | 875464 |
| 2007 | Rent (07/2007) | | 207.00 | (349.26) | 875465 |
| 2007 | Rent Adj 7/07 | 107.00 | | (242.26) | 888420 |
| /2007 | Late Charge | (29.00) | | (271.26) | 953495 |
| 2007 | Rent (08/2007) | 25.00 | | (246.26) | 900947 |
| 2007 | Rent Adj 8/07 | 107.00 | | (139.26) | 914902 |
| 007 | Late Charge | (29.00) | | (166.26) | 953496 |
| 007 | Rent (09/2007) | 25.00 | | (143.26) | 928294 |
| 007 | Rent Adj 9/07 | 107.00 | | (36.26) | 941057 |
| 007 | Late Charge | (29.00) | | (65.26) | 953497 |
| 2007 | Rent (10/2007) | 25.00 | | (40.26) | 952286 |
| 007 | Late Charge | 78.00 | | 37.74 | 966590 |
| 007 | Rent (11/2007) | 25.00 | | 62.74 | 979185 |
| 007 | Late Charge | 78.00 | | 140.74 | 993070 |
| | | 25.00 | | 165.74 | 1004289 |

Ledger

| Date | Description | | | | |
|---|---|---|---|---|---|
| 12/1/2007 | Rent (12/2007) | | | | |
| 1/1/2008 | Rent (01/2008) | 78.00 | | 243.74 | 1019153 |
| 2/1/2008 | Rent (02/2008) | 78.00 | | 321.74 | 1044783 |
| 2/8/2008 | Late Charge | 78.00 | | 399.74 | 1070554 |
| 3/1/2008 | Rent (03/2008) | 25.00 | | 424.74 | 1083106 |
| 4/1/2008 | Rent (04/2008) | 78.00 | | 502.74 | 1095200 |
| 5/1/2008 | Rent (05/2008) | 78.00 | | 580.74 | 1120203 |
| 5/5/2008 | Security Deposit credit | 78.00 | | 658.74 | 1144239 |
| 5/5/2008 | Rent (05/2008) Credit 26 days | (1,527.00) | | (868.26) | 1258997 |
| 5/5/2008 | Amount to be refunded | (65.42) | | (933.68) | 1258998 |
| 6/4/2008 | Invoice #696255 Complete carpet replacement, carpet left in awful condition | 215.42 | | (718.26) | 1259000 |
| 5/4/2008 | Per settlement agreement Bridgewater allowed to stay through April 30, 2008 rent free | 1,377.00 | | 658.74 | 1181494 |
| 5/4/2008 | | (658.74) | | 0.00 | 1181495 |

| ATTORNEY (Name and Address): | TELEPHONE NO.: | LEVYING OFFICER (Name and Address): |
|---|---|---|
| Kimball, Tirey & St. John<br>5994 W. Las Positas Blvd.,#219<br>Pleasanton, CA  94588 | | County of San Francisco<br>San Francisco Sheriff  Civil Section<br>1 Dr. Carlton B. Goodlett PL Rm 456<br>Civil Divison<br>San Francisco, CA  94102<br><br>(415) 554-7235 |

NAME OF COURT, JUDICIAL DISTRICT OR BRANCH COURT, IF ANY:

San Francisco - Superior Court
400 McAllister Street
San Francisco, CA  94102

PLAINTIFF:
Hayes Valley Ltd. Partnership
DEFENDANT
Sharon Bridgewater

| Return on Writ of Possession | LEVYING OFFICER FILE NO.: 2007349192 | COURT CASE NO.: CUD06617995 |
|---|---|---|

I, Michael Hennessey, Sheriff, County of San Francisco, State of California, hereby certify that I received the annexed writ on 12/24/2007, and that the herein defendant(s):

Sharon Bridgewater

427 Page Street
San Francisco, CA 94102

Was/were served with a notice to surrender the premises with five (5) days or I would proceed to enforce said writ.  My proceedings under the writ, and the return there on, are those as indicated below:

      Copy of Notice posted at premises on 12/26/2007
      Copy of Notice mailed to defendant(s) on 12/26/2007

I served the same by placing the plaintiff in quiet and peaceful possession of the premises on 1/16/2008.  I returned said writ fully satisfied as to plaintiff's possession only and with accrued costs of $75.00.

Michael Hennessey, Sheriff
County of San Francisco
State of California

Executed: January 16, 2008

By: _S. Dep Ogard #7_
Sheriff's Authorized Agent

07-349919  EJ-13

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number and address):*
SHAWN BANKSON
SHAWN BANKSON, BAR #223638
KIMBALL, TIREY & ST. JOHN
5994 W. LAS POSITAS BOULEVARD #219
PLEASANTON, CA 94588
TELEPHONE NO.: 800-525-1690    FAX NO. *(Optional):*
E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):* PLAINTIFF
[X] ATTORNEY FOR  [X] JUDGMENT CREDITOR  [ ] ASSIGNEE OF RECORD

FOR COURT USE ONLY

**F I L E D**
San Francisco County Superior Court

JAN 3 0 2008

GORDON PARK-LI, Clerk
BY: _____
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
STREET ADDRESS: COUNTY OF SAN FRANCISCO
MAILING ADDRESS: 400 McAllister, 1st Floor
CITY AND ZIP CODE: San Francisco, California 94102
BRANCH NAME: Limited Civil Jurisdiction

PLAINTIFF: HAYES VALLEY LIMITED PARTNERSHIP

DEFENDANT: SHARON BRIDGEWATER

| WRIT OF | [ ] EXECUTION (Money Judgment)<br>[X] POSSESSION OF  [ ] Personal Property<br>[X] Real Property<br>[ ] SALE | CASE NUMBER:<br>CUD-06-617995 |
|---|---|---|

1. **To the Sheriff or Marshal of the County of:** SAN FRANCISCO

   You are directed to enforce the judgment described below with daily interest and your costs as provided by law.

2. **To any registered process server:** You are authorized to serve this writ only in accord with CCP 699.080 or CCP 715.040.

3. *(Name):* HAYES VALLEY LIMITED PARTNERSHIP
   is the [X] judgment creditor  [ ] assignee of record    whose address is shown on this form above the court's name.

4. **Judgment debtor** *(name and last known address):*

   SHARON BRIDGEWATER
   427 PAGE STREET
   SAN FRANCISCO, CA 94102

   [ ] Additional judgment debtors on next page
5. **Judgment entered on** *(date):* 12/19/2007

6. [ ] **Judgment renewed on** *(dates):*

7. **Notice of sale** under this writ
   a. [X] has not been requested.
   b. [ ] has been requested *(see next page).*
8. [ ] Joint debtor information on next page.

[SEAL]

9. [X] See next page for information on real or personal property to be delivered under a writ of possession or sold under a writ of sale.
10. [ ] This writ is issued on a sister-state judgment.
11. Total judgment . . . . . . . . . . . . . . . . . $        0.00
12. Costs after judgment (per filed order or memo CCP 685.090) . . . . . . . . . . . . . $        0.00
13. Subtotal *(add 11 and 12)* . . . . . . . . . . . $        0.00
14. Credits . . . . . . . . . . . . . . . . . . . . $        0.00
15. Subtotal *(subtract 14 from 13)* . . . . . . . . $        0.00
16. Interest after judgment (per filed affidavit CCP 685.050) (not on GC 6103.5 fees) . . . $        0.00
17. Fee for issuance of writ . . . . . . . . . . . . $       15.00
18. **Total** *(add 15, 16, and 17)* . . . . . . . . $       15.00
19. Levying officer:
   (a) Add daily interest from date of writ *(at the legal rate on 15)* (not on GC 6103.5 fees) of . . . . . . . . . . $        0.00
   (b) Pay directly to court costs included in 11 and 17 (GC 6103.5, 68511.3; CCP 699.520(i)) . . . . . . . . . . . . . $        0.00
20. [ ] The amounts called for in items 11–19 are different for each debtor. These amounts are stated for each debtor on Attachment 20.

Issued on *(date):* DEC 31 2007    GORDON PARK-LI
Clerk, by CAROLYN BALDONI , Deputy

**NOTICE TO PERSON SERVED: SEE NEXT PAGE FOR IMPORTANT INFORMATION.**

Form Approved for Optional Use
Judicial Council of California
EJ-130 [Rev. January 1, 2006]

**WRIT OF EXECUTION**

Legal Solutions Plus

Page 1 of 2
Code of Civil Procedure, §§ 699.520, 712.010
Government Code, § 6013.5



IMAGED

JAN 2 5 2008

1  Name: Sharon Bridgewater
2  Address: 427 Page St., San Francisco, CA 94102

3  Phone #: 415-573-7992

FILED
San Francisco County Superior Court

4
5                    SUPERIOR COURT OF THE STATE OF CALIFORNIA
6                         COUNTY OF SAN FRANCISCO

JAN 2 2 2008
GORDON PARK-LI, Clerk
BY: _____
                        Deputy Clerk

7
8    Hayes Valley Apartments        ) Case No.: CUD-06-617995
9              Plaintiff,            ) **ORDER GRANTING MOTION TO VACATE**
10   vs.                            ) **JUDGMENT**
                                    )
11   Sharon Bridgewater             )) Date: 1-22-08
12            Defendant,            )) Time: 9:30 a.m.
                                    ) Dept: 301
13   _____

14        This matter came before the court on __1-22-08__. Upon

15   considering the arguments and evidence presented, good cause appearing

16   thereon, the Court finds that the judgment entered on 12-19-67 (SA)

17   is hereby vacated.

18        IT IS SO ORDERED.

19

20   Date: 1/22/08                  _____
21                                  Judge of the Superior Court

22                                      PETER J. BUSCH

23
24
25
26
27
28

- 1 -

⑦

1 | KIMBALL, TIREY & ST. JOHN, LLP
2 | Jane L. Creason Bar No. 189094
   | 5994 W. Las Positas Blvd., Suite 219
   | (800) 525-1690
3 | (800) 281-1911 (fax)
4 | Attorney for Plaintiff
   | HAYES VALLEY LIMITED PARTNERSHIP
5

**F I L E D**
SUPERIOR COURT
COUNTY OF SAN FRANCISCO

FEB 1 9 2008

GORDON PARK-LI, Clerk
BY: _____
             Deputy Clerk

6
7              SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

8
9  | HAYES VALLEY LIMITED PARTNERSHIP    )    Case No.: CUD-06-617995
10 |                         Plaintiff,         )    STIPULATION FOR ENTRY OF JUDGMENT
   |         Vs.                          )    AND ORDER THEREON
11 |                                       )
12 | SHARON BRIDGEWATER                    )
13 |                                       )
   |                         Defendant       )
14 |                                       )
   | DOES 1 TO 10 INCLUSIVE                )
15 |                                       )
16

17          IT IS SO STIPULATED by and between the parties hereto through Plaintiff's counsel,

18  KIMBALL, TIREY & ST. JOHN; Plaintiff, HAYES VALLEY LIMITED PARTNERSHIP,

19  and Defendant, SHARON BRIDGEWATER, that judgment in the above-entitled will be entered

20  as follows should Defendant fail to comply with any of the terms stated herein:

21          1.      Plaintiff to receive possession of the premises located at 427 PAGE STREET,

22  San Francisco, CA, 94102 on ~~March 17~~, *April 30*, 2008. A Writ of Possession for said premises may

23  issue immediately if Defendant has not restored possession to Plaintiff by vacating said

24  premises on or before ~~March 17~~, *April 30*, 2008 by the close of business at 6:00 p.m.

25          2.      The parties further agree that in exchange for Defendant moving out by ~~April 3~~, *April 30*

26  ~~2008~~ *2008*, Plaintiff will waive all of the past due rent in the amount of $2,124.74.

*Complaint*
1



3.     Plaintiff waives $450 attorneys' fees and $405 in costs.

4.     The rental agreement/lease under which Defendant holds possession of said

property is forfeited on ~~March 17~~, 2008. *april 30* ~~(handwritten initials)~~

5.     Defendant SHARON BRIDGEWATER expressly waives any and all rights to a

noticed motion and/or right to a hearing on the entry of a judgment pursuant to this stipulation.

6.     Defendant SHARON BRIDGEWATER expressly agrees to leave the premises in

good repair and clean condition according to California law.

7.     Plaintiff shall return Defendant's security deposit in ~~the Amount of $600.00 in~~

~~exchange for keys on March 17, 2008.~~ *accordance with California law.* (handwritten initials)

8.     Defendant SHARON BRIDGEWATER and any others in possession will move

out ~~March 17~~, 2008 by 6:00 p.m. *april 30* (handwritten initials)

9.     If Defendant fails to comply with any of the terms as herein stated, judgment shall

enter for possession and the full amount of past due rent, attorneys' fees and costs.  A writ of

execution for money and possession shall issue immediately upon Declaration by Plaintiff's

counsel if Defendant fails to comply with this stipulation. Judgment for possession shall be

entered pursuant to CCP 415.46 as to any and all occupants.

10.     In the event of non-compliance, Plaintiff shall give 24-hour telephonic notice to

the defendant at the following phone number:  415·401·5573 .

11.     This stipulation shall be dispositive of all issues raised in Plaintiff's Complaint and

all affirmative defenses which could have been raised in Defendant's Answer, ~~and shall be~~

~~considered res judcata in any further proceeding initiated by either party.~~ (handwritten initials)

12.     It is further stipulated that facsimile signatures shall be deemed originals, per

California Rules of Court, Rule 2.305 (d) and that this Stipulation may be executed in

1    counterparts as circumstances require and shall be deemed fully enforceable upon execution

2    of all parties hereto.

3

4      13.     In the future, Plaintiff will give only a neutral reference as to dates of occupancy

5    and rental amount.

6      14.     Each signatory hereto represents that they have the express authority from the

7    party they represent to sign for and bind that party to the terms herein.

8     15. Defendant reserve the right to sue in the further and

9       do not give up all claims pertaining to further law suits

     Dated: _____ 2/19/08 _____

10

11                    Defendant- SHARON BRIDGEWATER

12    Dated: _____ 2/19/08 _____

13                    Plaintiff- HAYES VALLEY LIMITED PARTNERSHIP

14                    By: _____

                    Authorized Agent for Plaintiff

15    Dated: _____ 2/19/08 _____

16

17                    KIMBALL, TIREY & ST. JOHN, LLP

                    Attorneys for Plaintiff

18                    By: Jane Creason

19

20                    **ORDER**

21    IT IS SO ORDERED:

22

23    Dated: _____ 2-19-08 _____

24                    Judge Pro Tem

25                    JUDGE/COMMISSIONER OF THE SUPERIOR COURT

26

27

28



# Kimball, Tirey & St. John LLP

## What You Should Know: Evictions and the Right to a Jury Trial

*Jane Creason, Esq.*

**March, 2009**

For over 100 years, California's Constitution has granted defendants in most lawsuits the right to a jury trial. The California Constitution states in part, "Trial by jury is an inviolate right and shall be secured to all..." This right extends to both residential and commercial tenants subject to an unlawful detainer action (eviction).

Can this right be waived in the tenant's lease or other document? Recent case law has clarified that a right to a jury trial cannot be waived before the lawsuit is filed. This means that jury trial waivers in both commercial and residential leases are not enforceable.

### Using the jury trial as leverage

Unfortunately, some unscrupulous attorneys and tenants demand jury trials for the ulterior purpose of holding their landlord hostage to the legal system. Knowing that a jury trial typically takes much longer to set, and longer to try, and that it is therefore more expensive to prosecute, some tenant's attorneys and eviction defense firms can, and do, use the demand of a jury trial as leverage to make unreasonable settlement demands.

They also know that a jury is much less predictable than an experienced judge, and that juries occasionally decide cases on misunderstandings, or what they think the law should be, but is not. Ironically, jury trials for evictions drive up legal costs for landlords, creating more pressure to raise rents, hurting the very tenants that legal defense centers claim to be helping.

Demanding jury trials on unlawful detainer actions is also a tremendous burden for the courts and ultimately the taxpayers who pay for them. Typically, unlawful detainer trials are heard by competent commissioners and judges who are familiar with the intricacies of landlord/tenant law. In a typical day, one court can hear as many as eight or more cases. On the other hand, a jury trial can take up an entire courtroom for several days. It is often difficult to find available court rooms to hear jury trials, and delays of up to several weeks can occur.

### Free legal representation for the defendant

Once a residential unlawful detainer action is filed, court clerks are required to mail notices to defendant/tenants informing them that they may qualify for pro bono (free) representation along with contact information of legal aid and eviction defense firms. Some of these firms, especially in the San Francisco Bay/Oakland area, demand jury trials on almost every case as a matter of course.

So what can be done when a defendant/tenant demands a jury trial during the eviction process? The first thing to do is determine whether or not the defendant/tenant posted the required amount of jury fees, which is a condition of being granted a jury trial. However, if the defendant/tenant cannot afford to pay for a jury trial, they can request the court waive the fee based upon their financial status.



## Summary judgments

The next step is to determine whether or not it is prudent to file a summary judgment motion. This motion would remove the need for a trial by jury as it alleges that there are no disputed issues of fact for a jury to decide and instead, the case can be decided by a judge on the basis of the law alone. If a summary judgment motion is not advisable, then a motion can be made requesting the court to limit the scope of the jury to a short, specific set of facts. If granted, this strategy can reduce the number of days of a jury trial as well as the risk of an undesirable decision based on extraneous evidence.

## Attorney's fees and costs

Attorney's fees and costs are an important consideration when facing a jury trial. If the defendant/tenant is the prevailing party, the landlord is responsible for paying the tenant's attorney's fees and costs in addition to their own fees and costs. Payment of "reasonable" fees and costs must be made even if the defendant qualified for free legal aid services and has not actually paid any attorney's fees or costs. As a result, many landlords are limiting the amount of attorney's fees to be awarded to the prevailing party through their lease. The limit is typically $500 to $1000.

It is important to limit rather than remove the attorney's fees and costs provision in your lease, since having an attorney's fees clause may be important as a deterrent to otherwise litigious tenants, and also allows for recovery of fees and costs through the collection process. In fact, many attorney's fees and costs awards are more than 40% of the landlord's total judgment in an unlawful detainer, and judgments carry a 10% interest rate until collected. Although the prevailing landlord will also be limited in the recovery of fees and costs, there is a benefit to preventing an unlimited fees and costs award in the event that the tenant is the prevailing party...especially in an expensive jury trial.

## Experienced representation

It is also very important to be represented by a firm or attorney who is experienced in conducting jury trials. Many attorneys have never tried a case in front of a jury and it takes an experienced attorney to know how best to represent their clients in what some have called "an art." If you are faced with a jury trial, make sure your attorney is experienced and skilled in conducting jury trials.

## Settling the case

Should you settle? There are other than just monetary considerations when deciding whether or not to take what seems to be an unreasonable offer of settlement. If you settle the case, you have certainty and you avoid the stress and anxiety that a trial can bring. You also save the time spent in preparation and in court. However, you may also end up with a tenant who is motivated to share the terms of the settlement with other tenants on your property and/or repeat the same actions with future landlords. Although the terms of the settlement can include confidentiality, it is difficult to enforce. Finally, the attorney or eviction defense firm also learns that you are amenable to settlement offers from future defendant/tenants.

*Kimball, Tirey & St. John LLP trial attorneys performed approximately 7,000 court and/or jury trials in 2008, and are seasoned experts in representing the firm's clients in litigation.*

---

*Kimball, Tirey & St. John LLP is a full service real estate law firm representing residential and commercial property owners and managers. This article is for general information purposes only. Before acting, be sure to receive legal advice from our office. If you have questions, please contact your local KTS office. For contact information, please visit our website: www.kts-law.com. For past Legal Alerts, Questions & Answers, and Legal Articles, please consult the resource library section of our website.*

© 2009 Kimball, Tirey and St. John LLP

# EXHIBIT 3

| ATTORNEY , *Name and Address*: | TELEPHONE NO.: | LEVYING OFFICER *(Name and Address)*: |
|---|---|---|
| **Kimball, Tirey & St. John**<br>**5994 W. Las Positas Blvd.,#219**<br>**Pleasanton, CA 94588** | | |
| NAME OF COURT, JUDICIAL DISTRICT OR BRANCH COURT, IF ANY: | | **County of San Francisco**<br>**San Francisco Sheriff Civil Section**<br>**1 Dr. Carlton B. Goodlett PL Rm 456** |
| **San Francisco - Superior Court**<br>**400 McAllister Street**<br>**San Francisco, CA 94102** | | **Civil Divison**<br>**San Francisco, CA 94102**<br><br>**(415) 554-7235** |
| PLAINTIFF:<br>**Hayes Valley Ltd. Partnership** | | |
| DEFENDANT:<br>**Sharon Bridgewater** | | |

| Return on Writ of Possession | LEVYING OFFICER FILE NO.:<br>**2007349192** | COURT CASE NO.:<br>**CUD06617995** |
|---|---|---|

I, Michael Hennessey, Sheriff, County of San Francisco, State of California, hereby certify that I received the annexed writ on 12/24/2007, and that the herein defendant(s):

Sharon Bridgewater

427 Page Street
San Francisco, CA 94102

Was/were served with a notice to surrender the premises with five (5) days or I would proceed to enforce said writ. My proceedings under the writ, and the return there on, are those as indicated below:

        Copy of Notice posted at premises on 12/26/2007
        Copy of Notice mailed to defendant(s) on 12/26/2007

I served the same by placing the plaintiff in quiet and peaceful possession of the premises on 1/16/2008. I returned said writ fully satisfied as to plaintiff's possession only and with accrued costs of $75.00.

                                   **Michael Hennessey, Sheriff**
                                   **County of San Francisco**
                                   **State of California**

Executed: January 16, 2008

                                   By: _____
                                   Sheriff's Authorized Agent

③

**Return on Writ of Possession**
Original

160455

07-349192   EJ-130

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number and address)*: | FOR COURT USE ONLY |
|---|---|

SHAWN BANKSON
SHAWN BANKSON, BAR #223638
KIMBALL, TIREY & ST. JOHN
5994 W. LAS POSITAS BOULEVARD #219
PLEASANTON, CA 94588
  TELEPHONE NO: 800-525-1690    FAX NO. *(Optional)*:
E-MAIL ADDRESS *(Optional)*:
  ATTORNEY FOR *(Name)*: PLAINTIFF
[X] ATTORNEY FOR  [X] JUDGMENT CREDITOR  [ ] ASSIGNEE OF RECORD

**F I L E D**
San Francisco County Superior Court

JAN 3 0 2008

GORDON PARK-LI, Clerk
BY: _____
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN FRANCISCO
  STREET ADDRESS: COUNTY OF SAN FRANCISCO
  MAILING ADDRESS: 400 McAllister, 1st Floor
  CITY AND ZIP CODE: San Francisco, California 94102
  BRANCH NAME: Limited Civil Jurisdiction

PLAINTIFF:  HAYES VALLEY LIMITED PARTNERSHIP

DEFENDANT:  SHARON BRIDGEWATER

| WRIT OF | [ ] EXECUTION (Money Judgment) | CASE NUMBER: |
|---|---|---|
| | [X] POSSESSION OF  [ ] Personal Property  [X] Real Property | CUD-06-617995 |
| | [ ] SALE | |

1. To the Sheriff or Marshal of the County of:  SAN FRANCISCO

   You are directed to enforce the judgment described below with daily interest and your costs as provided by law.

2. To any registered process server: You are authorized to serve this writ only in accord with CCP 699.080 or CCP 715.040.

3. *(Name):* HAYES VALLEY LIMITED PARTNERSHIP
   is the [X] judgment creditor  [ ] assignee of record    whose address is shown on this form above the court's name.

4. **Judgment debtor** *(name and last known address):*

SHARON BRIDGEWATER
427 PAGE STREET
SAN FRANCISCO, CA 94102

| | | |
|---|---|---|
| [ ] Additional judgment debtors on next page | 9. [X] | See next page for information on real or personal property to be delivered under a writ of possession or sold under a writ of sale. |
| 5. **Judgment entered on** *(date):* 12/19/2007 | 10. [ ] | This writ is issued on a sister-state judgment. |
| | 11. Total judgment . . . . . . . . . . . . . . . . . . . . $ | 0.00 |
| 6. [ ] **Judgment renewed on** *(dates):* | 12. Costs after judgment (per filed order or memo CCP 685.090) . . . . . . . . . . . . . $ | 0.00 |
| | 13. Subtotal *(add 11 and 12)* . . . . . . . . . . $ | 0.00 |
| | 14. Credits . . . . . . . . . . . . . . . . . . . . . . . . $ | 0.00 |
| 7. **Notice of sale** under this writ | 15. Subtotal *(subtract 14 from 13)* . . . . . . $ | 0.00 |
|   a. [X] has not been requested. | 16. Interest after judgment (per filed affidavit CCP 685.050) (not on GC 6103.5 fees) . . . $ | 0.00 |
|   b. [ ] has been requested *(see next page)*. | 17. Fee for issuance of writ . . . . . . . . . . . . . . $ | 15.00 |
| 8. [ ] Joint debtor information on next page. | 18. **Total** *(add 15, 16, and 17)* . . . . . . . . . . $ | 15.00 |
| [SEAL] | 19. Levying officer: | |
| |   (a) Add daily interest from date of writ *(at the legal rate on 15)* (not on GC 6103.5 fees) of . . . . . . . . . . . . . . . . . $ | 0.00 |
| |   (b) Pay directly to court costs included in 11 and 17 (GC 6103.5, 68511.3; CCP 699.520(i)) . . . . . . . . . . . . . . . . . . . . $ | 0.00 |
| | 20. [ ] The amounts called for in items 11–19 are different for each debtor. These amounts are stated for each debtor on Attachment 20. | |

Issued on *(date):* DEC 21 2007   GORDON PARK-LI
   Clerk, by CAROLYN DALISAY, Deputy

NOTICE TO PERSON SERVED: SEE NEXT PAGE FOR IMPORTANT INFORMATION.

Form Approved for Optional Use
Judicial Council of California
EJ-130 [Rev. January 1, 2006]
**WRIT OF EXECUTION**  Legal Solutions Plus
Page 1 of 2
Code of Civil Procedure, §§ 699.520, 712.010
Government Code, § 6013.5

# EXHIBIT 4

1/11/08

Received from Sharon Bridgewater
Three hundred forty + no/100
(Cash) down payment on #500 deposit
for 1769 Dalecate Ave, SF —
Balance of $160 plus your
share of first + last month's rent
due ~~is~~ before move in date

Suzanne Banford
Autry Banford

333-9181
Cell 816-1312
816-2204

④

SAN FRANCISCO HOUSING AUTHORITY        TENANT/OWNER ASSISTED LEASE
LEASED HOUSING DIVISION                SECTION 8 HOUSING CHOICE
1815 EGBERT STREET                     VOUCHER PROGRAM
SAN FRANCISCO, CA 94124
(415) 715-3280/(415) 715-3287-FAX

1. Parties:
   Landlord   BANFORD, AUTRY/SUSSANNE
   Address    155 BEVERLY STREET
              SAN FRANCISCO, CA 94132

   TENANT     SHARON BRIDGEWATER

2. Unit
   Address    1769 OAKDALE AV
              SAN FRANCISCO, CA 94124

The household consists of the following members:

   SHARON BRIDGEWATER
JAMES BRIDGEWATER S.

3. Term of Lease:
   The term of the Lease begins 01/31/08 and shall
   end on 12/31/08. In the event that a new lease is not
   executed, the tenancy shall continue on a month to month basis
   effective the first of the month following the expiration
   date of the lease term. The anniversary month of this lease
   shall be 01.

4. Rent:
   A. $ 717.00 shall be payable by the PHA as a
              housing assistance payment on behalf of the
              tenant.
      $ 1,033.00   shall be payable by the Tenant directly
              to the landlord.
      $ 1,750.00 per month is the total rent amount the
              landlord can collect for the unit.
   B. The amount of the total monthly rent payable to the
      Landlord during the term of the Lease (called the
      "contract rent") shall be determined in accordance with
      the Contract between the Landlord and the PHA.
   C. The portion of the Contract rent payable by the Tenant
      ("tenant rent") shall be an amount determined by the
      PHA in accordance with HUD regulations and requirements.
      The amount of the tenant rent is subject to change as
      determined by the PHA during the term of the Lease. Any
      change in the amount of the tenant rent will be stated
      in a written notice by the PHA to the Tenant and the
      Landlord, stating the new amount and the effective date
      of the change. Initially and until such change the
      Tenant agrees to pay 1,038.00 per month to the
      Landlord as the tenant rent. The rent is due and payable
      on the first day of the month; the initial rent payment
      shall be prorated if the Lease does not begin on the
      first day of the month.

# EXHIBIT 5

12.    Each signatory hereto represents that they have the express authority from the party they represent to sign for and bind that party to the terms herein.

Dated: ___5/3/06___

_____
Hayes Valley Limited Partnership
Plaintiff
By:  Hasinah Rahim
Authorized Agent for Plaintiff

Dated: ___5/3/06___

_____
Sharon Bridgewater
Defendant

Approved as to form and content:

Dated: ___5/4/06___

_____
Shawn K. Bankson SBN 223638
KIMBALL, TIREY & ST. JOHN
Attorneys for Plaintiff

4.

STIPULATION FOR ENTRY OF JUDGMENT; ORDER THEREON

⑤

Pre-eviction
Hearing with unauthorized PARTY!

1  Shawn K. Bankson SBN 223638
   KIMBALL, TIREY & ST. JOHN
2  5994 W. Las Positas Blvd., #219
   Pleasanton, Ca 94588
3  (800) 525-1690
   (800) 281-1911 (fax)
4

5  Attorney for Plaintiff
   Hayes Valley Limited Partnership
6

ENDORSED
F I L E D
San Francisco County Superior Court

MAY 1 1 2006

GORDON PARK-LI, Clerk
BY: _____RONNIE OTERO_____
Deputy Clerk

7

8

9                 SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                          COUNTY OF SAN FRANCISCO

11

12  HAYES VALLEY LIMITED PARTNERSHIP        )   Case No.: CUD-06-617995
13                       Plaintiff,          )
           Vs.                               )   STIPULATION FOR ENTRY OF JUDGMENT
14                                           )   DISMISSAL;  ORDER THEREON
                                             )
15  SHARON BRIDGEWATER                       )
16                  Defendant(s)             )
                                             )
17  DOES 1 TO 10 INCLUSIVE                   )
                                             )
18                                           )
                                             )
19                                           )

20

21  IT IS SO STIPULATED by and between the parties hereto through Plaintiff's counsel, Kimball,

22  Tirey & St. John; Plaintiff, Hayes Valley Limited Partnership, and Defendant Sharon

23  Bridgewater that Judgment in the above-entitled action will be entered as follows should

24  Defendant fail to comply with any terms of this stipulation.  Should Defendant fully and

25  voluntarily comply with all terms stipulated herein, Plaintiff agrees to dismiss this action with

26  prejudice pursuant to Paragraph 10, below:

27        1.      Defendant to remain in possession of the premises located at 427 Page Street,

28  San Francisco CA 94102, provided that Defendant complies with all terms stipulated herein.

                                            1

2.      The rental agreement/lease under which Defendant holds possession of said property is not forfeited unless Defendant fails to comply with any term stipulated herein.

3.      Plaintiff is awarded $1,499.00 as principal, $595.00 as attorneys fees and $580.00 as court costs.  Said principal, attorneys fees and court costs, totaling $2,674.00, will be paid by Defendant to Plaintiff via cashier's check or money order as follows:

a.      $836.00 at the signing of this stipulation.

b.      $100.00 on or before the fifth day of each month, beginning on June 5, 2006, and continuing every month thereafter until the balance is paid in full.  The final payment of $38.00 will be due on or before November 5, 2007.

Any payment received in any given month will be first applied to the rent due for the current month and then to any stipulated payment.

4.      Defendant expressly waives any and all rights to a noticed motion and/or right to a hearing on the entry of a judgment pursuant to this stipulation.

5.      Should Defendant be required to surrender possession of the subject property in relation to this stipulation, Defendant expressly agrees to leave the premises in good repair and clean condition according to California law.

6.      Defendant's security deposit will be accounted for according to California law.

7.      Beginning on June 1, 2006, rent will be due as stated in the Lease Agreement between the parties.

8.      This stipulation shall be dispositive of all issues raised in Plaintiff's Complaint and all affirmative defenses which could have been raised in Defendant's Answer, and shall be considered res judicata in any further proceeding initiated by either party.

9.      The parties stipulate that facsimile signatures shall be deemed originals, per California Rules of Court, Rule 2007(d), and that this Stipulation may be executed in counterparts as circumstances require and shall be deemed fully enforceable upon execution of all parties hereto.

2

10.     Defendant agrees that if Defendant fails to timely comply with any term or condition of the stipulation, the lock-out date and the payments shall be accelerated without a hearing.  If Defendant is granted any hearing, the only issue to be decided by the Court shall be the timeliness of payments scheduled in Paragraph 3 of this stipulation. Time is of the essence.  Non-compliance with this agreement will be evidenced by *ex parte* written declaration by Plaintiff's attorney.  Upon any non-compliance with any term of this stipulation, Plaintiff may request that this court issue judgment for Plaintiff for possession of the premises, forfeiture of any rental agreement, writs of possession to be issued and immediately enforced, and for the entire unpaid balance which shall become immediately due.  Failure to comply includes failure to make any portion of any stipulated payment.  Upon Defendant's full and voluntary compliance with all terms stipulated herein, Plaintiff will cause this matter to be dismissed with prejudice within ten (10) days of Defendant's full compliance.

11.     As consideration for this agreement, Defendant hereby waives her right to seek any stay of this proceeding in this or any other court, state or federal.

//
//
//
//
//
//
//
//
//
//
//
//
//
//

3

# EXHIBIT 6

IMAGED
JAN 2 5 2008

1  Name: Sharon Bridgewater
2  Address: 427 Page St., San Francisco, CA 94102
3  Phone #: 415-573-7992

FILED
San Francisco County Superior Court

JAN 2 2 2008

GORDON PARK-LI, Clerk
BY: _____
                    Deputy Clerk

5      SUPERIOR COURT OF THE STATE OF CALIFORNIA
6              COUNTY OF SAN FRANCISCO
7

8   Hayes Valley Apartments          ) Case No.: CUD-06-617995
9              Plaintiff,            )
                                     ) **ORDER GRANTING MOTION TO VACATE**
10     vs.                           ) **JUDGMENT**
                                     )
11  Sharon Bridgewater               )
                                     )) Date: 1-22-08
12             Defendant,            )) Time: **9:30** a.m.
                                     ) Dept: 301
13  _____

14      This matter came before the court on __1-22-08__. Upon
15  considering the arguments and evidence presented, good cause appearing
16  thereon, the Court finds that the judgment entered on 12-19-07/SA
17  is hereby vacated.

18      IT IS SO ORDERED.

19

20  Date: 1/22/08        _____
21                        Judge of the Superior Court
22
                          PETER J. BUSCH
23

24

25

26

27

28


VACATION of Judgment!        ⑥

- 1 -

# EXHIBIT 7



**EDC**
Eviction Defense Collaborative

**Rental Assistance Disbursement Component**
**RADCo**

995 Market Street, 12th Floor
San Francisco, CA  94103
Tel (415) 947-0797 x 113 • Fax (415) 947-0331

January 14, 2008

Peter Busch
Judge of the Superior Court
400 McAllister Street
San Francisco, CA 94102

Dear Mr. Busch,

I am writing in regards to Sharon Bridgewater who resides at 427 Page Street, San Francisco, CA 94102. Ms. Bridgewater has completed an application for rental assistance at this office. RADCo can help her with her back rent up to the amount of $1000.00 if Ms. Bridgewater can pay all other fees, if any. Pending the outcome of her case in court and we are informed of exactly how much back rent she owes, we will complete her application, and send payment directly to her landlord for back rent owed.

Do not hesitate to contact me if you have any questions.

Thank you for your patience and cooperation.

Sincerely,

Amy Price
Rental Assistance Coordinator



# EXHIBIT 8



**EDC**

Eviction Defense Collaborative

**Rental Assistance Disbursement Component**
**RADCo**

995 Market Street, 12th Floor
San Francisco, CA 94103
Tel (415) 947-0797 x301 • Fax (415) 947-0331

February 15, 2008

To Whom It May Concern:

I am writing in regards to Sharon Bridgewater who resides at 427 Page Street, San Francisco, CA 94102. Ms. Bridgewater came to our office to apply for rental assistance for the back rent she owed. In order to complete her application we needed to know how much of the amount due was rent, and how much was for legal, late fees, etc. This is because RADCo can only pay rent, and not any other fees. On more than four different occasions I attempted to get the correct amount from her apartment manager, but I was unable to. At one point I was sent a ledger, but then was told it was not the correct amount. As of today I have still not received the amount due and was therefore unable to finalize her application and pay her back rent.

Please contact me if you have any questions.

Thank you,

Sincerely,

*Amy Price*

Amy Price
Rental Assistance Coordinator

8

# EXHIBIT 9



# SUPERIOR COURT
## CITY & COUNTY OF SAN FRANCISCO
### SETTLEMENT CONFERENCE HEARING

HAYES VALLEY LIMITED PARTNERSHIP

_____

(PLAINTIFF(S))

CASE NO 617995

SHARON BRIDGEWATER, ET AL

LINE #1

_____

(DEFENDANT(S))

**Appearances:**

For Plaintiff: _____ SHAWN BANKSON _____ J. Creason, Esq.

For Defendant: _____ PRO PER _____

*Settled by stip 2-19-08 Alex Wolf*

Nature of Action: _____

Amount of Prayer: $ _____ 2:45 PM

Plaintiff's Demand: $ EITHER ① MOVE OUT w/ 90-Day WINDOW OR
Defendant's Offer: $ ② FULL PAYMENT OF ALL BACK RENT PLUS
ATTORNEY'S FEE as consideration
Residuale: _____ for pay and stay

Specials: _____

Court suggested settlement figure: $ _____

AT 3:30 PM that offer has been raised to 60-Day MOVE OUT, ACCOUNTING OF DEPOSIT WITH ANY SUM RETURNED ACCORDING TO LAW.

**TRIAL DATA:**

Case is set for **JURY – COURT** trial on _____ FEB 19 20 08

at 9:00 A.M., Courtroom 206, 400 McAllister Street

Time estimated for trial: _____

Court trial for assessment of damages only:    YES - NO

Names of Judges on panel for court trial: _____

Stipulation entered as to 8 person jury:    YES - NO

BAJI instruction numbers submitted: _____

Sanctions to be imposed if settled after 10:00 A.M. _____

ON CALENDAR _____ Will Chen

Judge Presiding, Settlement Hearing

**WILLIAM F. CHEN**



# EXHIBIT 10

# AGREEMENT TO RENT OR LEASE

This is intended to be a legally binding Agreement - **READ IT CAREFULLY**.

**Parties** - This (Rental/Lease) Agreement is made and entered into on the 6-5-09 by and between Janet Cedi hereinafter referred to as Owner/Agent and Sharon Bridgewater hereinafter referred to as Resident(s). Premises shall be occupied only by the following:

① Sharon Bridgewater

| Name | Birthdate | Name | Birthdate |
|------|-----------|------|-----------|
| | | | |
| Name | Birthdate | Name | Birthdate |
| | | | |
| Name | Birthdate | Name | Birthdate |

**Address** - 11 Preda St #7 San Leandro
Hereinafter referred to as Premises.

**Occupancy of the Premises** - Resident shall use the premises for residential purposes only. Only the parties listed as Resident herein shall occupy the premises and the premises shall be used as a residence for not more than 1 adults and N/A children. Occupancy by guests staying over seven (7) days without the written consent of Owner shall be considered a breach of this Agreement. Resident agrees that neither he/she nor his/her guests shall keep or bring into said rented premises, on the grounds thereof, any animal, bird, fowl, pet, piano, waterbed or electrical organ without the prior written consent of Owner. Pet Deposit is required for any Management authorized pet. Occupancy standards are set forth in the Rules and Regulations.

1) **Term** - This Agreement shall commence on _____ and continue:
   On month to month basis until legal written termination notice is given

   or ☒ For a period of 12 months commencing 6-5-09 and ending 6-5-10
   Thereafter, tenancy reverts to month to month and all other terms & conditions remain the same.

2) **Rent** - $_____ per month payable in advance on or before 1st day of each month to Property Management _____ or at such places as may be designated by Management. **NO CASH ACCEPTED**. Prior to move in and execution of this agreement resident shall pay:
   A. ☐ $_____ rent which is pro-rated amount for remainder of first month.

   B. ☒ $1202 which is a full months rent. With option B resident will pay on 1st of next month the prorated amount of N/A.

3) **Move-In Bonus:** Resident received __N/A__ Resident agrees to reimburse owner the full amount of move-in bonus if resident vacates prior to six months from commencement date _____.

4) **Agreed Liquidated Damages** - Management incurs costs connected with "late" rents and "bad" checks. Since these costs are difficult to measure the amount shown below shall be designated as liquidated damages.
   **Late Rent Charge** - If any portion of the rent is received after 5 PM on the 3rd day of any month, resident agrees to pay a late charge of $50.00 and a possible three-day notice incurred. A service charge of $25.00 shall be billed to Resident upon delivery of a Three-day Notice to Pay Rent, 30 Day Notice or any other legal notice.
   **Returned Check Charge** – Resident is hereby advised that, pursuant to Civil Code Section 1719, if any check is returned by Resident's bank, Resident may be liable to the payee for the amount of the check plus damages equal to treble that amount, which damages shall not be less than one hundred dollars ($100) nor more than one thousand five hundred dollars ($1,500). If a check is returned from the bank the resident agrees to pay a returned check charge of $25.00 in addition to any late rent charge. No further personal checks will be accepted except with prior written permission from Management. **(Cashiers Checks/Money Orders ONLY)**

5) **Allocations of Monies Received** - Regardless of any notations made on check or any other directions from resident it is agreed that all monies received shall be allocated in the following order. To pay off any charges other than rent owing including, but not limited to, late charges, bad check charges, utility bills, bills to cover damage caused by resident or guests, or other charges which are the obligation of the resident. Balance will be applied to rent owing starting at the earliest rent.

6) **Security Deposit** - (fully refundable) The total of $100.00 is to be paid as security deposit as security towards the performance of all terms and obligations of this contract. It is understood that upon termination all or part of the deposit can be retained to cover expenses incurred by management in cleaning and painting the apartment, repairing damage caused by the

# EXHIBIT 11

.ated Companies Announces $1.4 Billion Equity and Debt Investment by Elite          Page 2 of 3

Group, said, "MSD Capital is pleased to make this equity investment in
Related, which is led by one of the strongest management teams in the
business. Related is developing some of the most exciting projects in the
country, and we look forward to growing our partnership with them over the
long term."

"Khaldoon Khalifa Al Mubarak, Mubadala CEO and Managing Director, said,
"Related is a strong fit for Mubadala. We share their approach to investing
in premier projects that build long-term value. Related has great
leadership and an impressive project pipeline with even more potential
opportunities."

Anthony S. Fusco, The Olayan Group's U.S. vice president for real
estate, said, "This investment continues our organization's strategy of
creating long- term alliances in all of our lines of business with strong,
qualified, strategic partners. As a top developer and property manager in
the U.S. market, Related certainly fulfills that role."

Related was advised by a team that included Goldman Sachs, Deutsche
Bank and Eastdil Secured.

About Related Companies:

Heralded as one of the most prolific and visionary developers in the
country, Related Companies was formed over thirty-five years ago. Today
Related is considered the most prominent privately owned real estate
development firm in the United States, headquartered in New York City with
divisions in development, acquisitions, property management, marketing and
sales. In 2004, Related completed the development of New York City's newest
landmark, Time Warner Center. Related has offices and major developments in
Miami, Los Angeles, San Francisco, Chicago and Boston and boasts a team of
more than 2,000 professionals. To date, Related has real estate assets
worth over $15 billion with another $9 billion currently in development. In
Los Angeles, Related is expanding its portfolio with The Century, a
super-luxury condominium in Century City and the Frank Gehry-designed Grand
Avenue development, situated directly across from the beloved Walt Disney
Concert Hall, which will include luxury residences, retail, notable
restaurants and a world class hotel.

Related is staunchly committed to sustainable design with over $6
billion in green development underway or completed. The firm developed one
of the first green residential buildings in the nation, Tribeca Green in
Battery Park City, New York and Chicago's first green residential building,
340 on the Park. Related is currently developing eight new LEED-certified
residential buildings, The Brompton, The Harrison, and Superior Ink in New
York City, The Clarendon in Boston, The Century in Los Angeles, The Village
in Santa Monica, Canyon Ranch Living and The Peshtigo in Chicago as well as
Bronx Terminal Market, a one million square foot retail development in
Bronx, New York. Related serves on the board of directors of the World
Resources Institute.

Earlier this year Related acquired a majority stake in Virgin
Megastores North America and this past year acquired Equinox(R) Fitness
Clubs, further expanding the company's capabilities into the health and
fitness arena and enhancing the value of its properties by incorporating an
exclusive, branded amenity into the lifestyle offering. The company is also
the largest shareholder in Centerline, the leading financier of affordable
housing in the country. For more information about Related Companies please
visit www.related.com.

About Goldman Sachs:

Goldman Sachs is a leading global investment banking, securities and
investment management firm that provides a wide range of services worldwide
to a substantial and diversified client base that includes corporations,
financial institutions, governments and high net worth individuals. Founded
in 1869, it is one of the oldest and largest investment banking firms. The
firm is headquartered in New York and maintains offices in London,
Frankfurt, Tokyo, Hong Kong and other major financial centers around the
world. For more information, visit www.gs.com.

About MSD Capital, L.P.:

MSD Capital was formed in 1998 to exclusively manage the capital of
Michael S. Dell and his family. The firm currently manages in excess of $12
billion in assets and participates in a broad range of investment
activities, with its primary focus on investing in publicly-traded
securities, real estate and traditional private equity. For more
information, visit www.msdcapital.com.

About Mubadala Development Company:

Mubadala is an investment and development company headquartered in Abu
Dhabi, the capital of the United Arab Emirates. Wholly-owned by the Abu
Dhabi Government, Mubadala's mission is to create and maximize long-term
returns as an engaged investor in high-performing businesses and promising
new ventures. The company has a growing and multifaceted international
portfolio, with significant interests in sectors such as energy,
telecommunications, infrastructure, real estate and aerospace. For more
information, visit www.mubadala.ae.

About The Olayan Group:

*Defendant's networth* (12)

*One Union Square , NYC*

*Time Warner Center, NYC*

< Home
> About the Gift
> About the Donor
> Education Michigan-Style
> About the Campaign
> About the School
> About the Dean
> Media Inquiries
> Photographs

## About the Donor

- Other Gifts to the University
- About The Related Companies

## About The Related Companies, L.P.

The Related Companies, with its team of more than 1,500 professionals who oversee a real estate portfolio valued in excess of $8 billion, is a fully integrated real estate firm with divisions specializing in development, acquisitions, financial services property management, sales and marketing.

Founded in 1972 and headquartered in New York City, Related has become synonymous with architectural excellence throughout the country and has major developments, partners and offices in Miami, Chicago and Los Angeles.

Key members of The Related Companies' management team, President Jeff Blau, BBA '90, and CFO Michael J. Brenner, MBA '68, are University of Michigan Business School graduates.

The company currently has approximately $4 billion in projects under construction, making it one of the most prominent developers in the United States. The Related Companies is also the largest shareholder in CharterMac, the country's largest financier of affordable housing in the United States, with approximately 250,000 units in 44 states.

For more about The Related Companies, L.P. visit www.related.com

© Stephen M. Ross School of Business at the University of Michigan



Send a release
Member sign in
Become a member
For journalists
Global sites

Search            Advanced Search
◯ Products & Services   ◯ News Releases
→

Products & Services          Knowledge Center          Browse News Releases          Contact PR Newswire

See more news releases in: Banking & Financial Services, Real Estate, Acquisitions, Mergers and Takeovers, Financing Agreements

RSS Feeds

## Related Companies Announces $1.4 Billion Equity and Debt Investment by Elite Consortium

Print

Email

Investment by Goldman Sachs, MSD Capital, Mubadala Development and Olayan Group Will Support Future Growth and Provide Access to Vast Capital Resources

Share it  ⌄

Blog it  ⌄

Blog Search  ⌄

NEW YORK, Dec. 17 /PRNewswire/ -- Related Companies, one of the nation's leading private real estate development firms, today announced a nearly $1.4 billion equity and debt investment, the first outside investment in the company. Goldman Sachs and MSD Capital, LP have purchased equity stakes in Related totaling 7.5 percent. Three international entities will also invest through a debt placement, including an affiliate of Mubadala Development Company and The Olayan Group.

In addition to the corporate investment, each investor will co-invest in future development opportunities undertaken by Related. This elite group of investors has been specifically selected to fund future growth. The minority investment in Related includes no involvement in the governance of the company and there will be no change in Related's management structure.

"This is a historic transaction for Related which will enable us to write a new chapter of our growth. This carefully-selected, prestigious group of investors will allow us to reinforce our position as one of the nation's leading developers, managers and financiers of premier real estate properties," said Related Chairman and CEO Stephen M. Ross. "In the last decade, the size, scope and geographic diversity of Related's development pipeline has increased dramatically with Time Warner Center and Moynihan Station in New York City, Grand Avenue in downtown Los Angeles, CityPlace in West Palm Beach, CityNorth in Phoenix and Snowmass Village in Colorado. As the industry continues to move toward bigger, more complicated development transactions, these new financial partnerships ensure that Related has a ready and deep source of capital to take advantage of virtually any opportunity regardless of size or scale."

Related President Jeff T. Blau said, "This access to new capital offers Related a tremendous competitive advantage. We are currently involved in some of the most ambitious real estate developments in the nation and are competing for a once-in-a-lifetime opportunity-to create a 26-acre, vibrant mixed-use waterfront neighborhood at the West Side Yards in New York City. This investment into our company is more than a financial arrangement. These long-term relationships will provide us with the financial flexibility to capitalize quickly on even the most challenging future opportunities. Above all else this show of confidence from the world's most elite investors is a testament to the strength of our team-a group of the brightest and most innovative and skilled employees, who are truly the best in the industry."

Related's current pipeline is comprised of marquee projects across the nation including: Grand Avenue, a multi-phase 3.6 million square foot, $3 billion development spanning three city blocks in downtown Los Angeles, California; the $3 billion, 80-acre Snowmass Village Resort development in Colorado; the 144-acre CityNorth mixed-use development in Phoenix, Arizona; and the development of the 7.5 million square foot Moynihan Station complex in New York City.

Stuart Rothenberg, Global Head of Real Estate Principal Investments at Goldman Sachs, said, "We're excited to make a strategic investment with a best-in-class developer and highly skilled management team. Related has a history of creating value and has developed some of the country's most financially successful projects."

Barry A. Sholem, Partner responsible for MSD Capital's Real Estate

Other News Releases in Banking & Financial Services

Longtop Financial Technologies Limited Announces Closing of Follow-on Public Offering and Underwriters' Exercise of Over-Allotment Option

Shrinking Inventory, Extended Federal Tax Credit Drive Santa Clara County Housing Market

The Middle East Business Jets Market Has Its Cash Registers Ringing Despite the Economic Downturn, Observes Frost & Sullivan

Other News Releases in Acquisitions, Mergers and Takeovers

MAK Capital to Seek Consent of Agilysys, Inc.; Shareholders to Increase Position in Company

Pardee Resources Company. Acquisition of Colorado Coal Reserves

CAMAC Signs Purchase and Sale Agreement on Oyo Oilfield With Pacific Asia Petroleum

Journalists and Bloggers

Visit PR Newswire for Journalists for releases, photos, ProfNet experts, and customized feeds just for Media.

View and download archived video content distributed by MultiVu on The Digital Center.

Related Companies Announces $1.4 Billion Equity and Debt Investment by Elite          Page 3 of 3

Founded in 1947, The Olayan Group is a private, multinational enterprise that is both a leading diversified business in Saudi Arabia and a major investor internationally. The group comprises some 50 companies and affiliated businesses engaged in product distribution, manufacturing, services and investment. It has offices in New York, London, Athens, Vienna, Riyadh, Al-Khobar and Jeddah. For more information, visit www.olayan.com.

SOURCE Related Companies

About PR Newswire | Contact PR Newswire | PR Newswire's Terms of Use Apply | Careers | Privacy | Site Map | RSS Feeds
Copyright © 1996-2009 PR Newswire Association LLC. All Rights Reserved.
A United Business Media company.



.ated Companies Announces $1.4 Billion Equity and Debt Investment by Elite                    Page 2 of 3

Group. said, "MSD Capital is pleased to make this equity investment in
Related, which is led by one of the strongest management teams in the
business. Related is developing some of the most exciting projects in the
country, and we look forward to growing our partnership with them over the
long term."

Khaldoon Khalifa Al Mubarak, Mubadala CEO and Managing Director, said,
"Related is a strong fit for Mubadala. We share their approach to investing
in premier projects that build long-term value. Related has great
leadership and an impressive project pipeline with even more potential
opportunities."

Anthony S. Pusco, The Olayan Group's U.S. vice president for real
estate, said, "This investment continues our organization's strategy of
creating long-term alliances in all of our lines of business with strong,
qualified, strategic partners. As a top developer and property manager in
the U.S. market, Related certainly fulfills that role."

Related was advised by a team that included Goldman Sachs, Deutsche
Bank and Fastall Secured.

About Related Companies:

Heralded as one of the most prolific and visionary developers in the
country, Related Companies was formed over thirty-five years ago. Today
Related is considered the most prominent privately owned real estate
development firm in the United States, headquartered in New York City with
divisions in development, acquisitions, property management, marketing and
sales. In 2004, Related completed the development of New York City's newest
landmark, Time Warner Center. Related has offices and major developments in
Miami, Los Angeles, San Francisco, Chicago and Boston and boasts a team of
more than 2,000 professionals. To date, Related has real estate assets
worth over $15 billion with another $9 billion currently in development. In
Los Angeles, Related is expanding its portfolio with The Century, a
super-luxury condominium in Century City and the Frank Gehry-designed Grand
Avenue development, situated directly across from the beloved Walt Disney
Concert Hall, which will include luxury residences, retail, notable
restaurants and a world class hotel.

Related is staunchly committed to sustainable design with over $6
billion in green development underway or completed. The firm developed one
of the first green residential buildings in the nation, Tribeca Green in
Battery Park City, New York and Chicago's first green residential building,
340 on the Park. Related is currently developing eight new LEED-certified
residential buildings, The Brompton, The Harrison, and Superior Ink in New
York City, The Clarendon in Boston, The Century in Los Angeles, The Village
in Santa Monica, Canyon Ranch Living and The Peshtigo in Chicago as well as
Bronx Terminal Market, a one million square foot retail development in
Bronx, New York. Related serves on the board of directors of the World
Resources Institute.

Earlier this year Related acquired a majority stake in Virgin
Megastores North America and this past year acquired Equinox(R) Fitness
Clubs, further expanding the company's capabilities into the health and
fitness arena and enhancing the value of its properties by incorporating an
exclusive, branded amenity into the lifestyle offering. The company is also
the largest shareholder in Centerline, the leading financier of affordable
housing in the country. For more information about Related Companies please
visit www.related.com.

About Goldman Sachs:

Goldman Sachs is a leading global investment banking, securities and
investment management firm that provides a wide range of services worldwide
to a substantial and diversified client base that includes corporations,
financial institutions, governments and high net worth individuals. Founded
in 1869, it is one of the oldest and largest investment banking firms. The
firm is headquartered in New York and maintains offices in London,
Frankfurt, Tokyo, Hong Kong and other major financial centers around the
world. For more information, visit www.gs.com.

About MSD Capital, L.P.:

MSD Capital was formed in 1998 to exclusively manage the capital of
Michael S. Dell and his family. The firm currently manages in excess of $12
billion in assets and participates in a broad range of investment
activities, with its primary focus on investing in publicly-traded
securities, real estate and traditional private equity. For more
information, visit www.msdcapital.com.

About Mubadala Development Company:

Mubadala is an investment and development company headquartered in Abu
Dhabi, the capital of the United Arab Emirates. Wholly-owned by the Abu
Dhabi Government, Mubadala's mission is to create and maximize long-term
returns as an engaged investor in high-performing businesses and promising
new ventures. The company has a growing and multifaceted international
portfolio, with significant interests in sectors such as energy,
telecommunications, infrastructure, real estates and aerospace. For more
information, visit www.mubadala.ae.

About The Olayan Group:

*Defendant's networth* (12)

out the Related Companies | Stephen M. Ross - University of Michigan Business School   Page 1 of 1

*One Union Square , NYC*

*Time Warner Center, NYC*

< Home
> About the Gift
> About the Donor
> Education Michigan-Style
> About the Campaign
> About the School
> About the Dean
> Media Inquiries
> Photographs

## About the Donor

- Other Gifts to the University
- About The Related Companies

### About The Related Companies, L.P.

The Related Companies, with its team of more than 1,500 professionals who oversee a real estate portfolio valued in excess of $8 billion, is a fully integrated real estate firm with divisions specializing in development, acquisitions, financial services property management, sales and marketing.

Founded in 1972 and headquartered in New York City, Related has become synonymous with architectural excellence throughout the country and has major developments, partners and offices in Miami, Chicago and Los Angeles.

Key members of The Related Companies' management team, President Jeff Blau, BBA '90, and CFO Michael J. Brenner, MBA '68, are University of Michigan Business School graduates.

The company currently has approximately $4 billion in projects under construction, making it one of the most prominent developers in the United States. The Related Companies is also the largest shareholder in CharterMac, the country's largest financier of affordable housing in the United States, with approximately 250,000 units in 44 states.

For more about The Related Companies, L.P. visit www.related.com

© Stephen M. Ross School of Business at the University of Michigan



PRNewswire
United Business Media

Send a release
Member sign in
Become a member
For journalists
Global sites

Search            Advanced Search
○ Products & Services   ○ News Releases
                                    →

Products & Services        Knowledge Center        Browse News Releases        Contact PR Newswire

See more news releases in: Banking & Financial Services, Real Estate, Acquisitions, Mergers and Takeovers, Financing Agreements

# Related Companies Announces $1.4 Billion Equity and Debt Investment by Elite Consortium

Investment by Goldman Sachs, MSD Capital, Mubadala Development and Olayan Group Will Support Future Growth and Provide Access to Vast Capital Resources

NEW YORK, Dec. 17 /PRNewswire/ -- Related Companies, one of the nation's leading private real estate development firms, today announced a nearly $1.4 billion equity and debt investment, the first outside investment in the company. Goldman Sachs and MSD Capital, LP have purchased equity stakes in Related totaling 7.5 percent. Three international entities will also invest through a debt placement, including an affiliate of Mubadala Development Company and The Olayan Group.

In addition to the corporate investment, each investor will co-invest in future development opportunities undertaken by Related. This elite group of investors has been specifically selected to fund future growth. The minority investment in Related includes no involvement in the governance of the company and there will be no change in Related's management structure.

"This is a historic transaction for Related which will enable us to write a new chapter of our growth. This carefully-selected, prestigious group of investors will allow us to reinforce our position as one of the nation's leading developers, managers and financiers of premier real estate properties," said Related Chairman and CEO Stephen M. Ross. "In the last decade, the size, scope and geographic diversity of Related's development pipeline has increased dramatically with Time Warner Center and Moynihan Station in New York City, Grand Avenue in downtown Los Angeles, CityPlace in West Palm Beach, CityNorth in Phoenix and Snowmass Village in Colorado. As the industry continues to move toward bigger, more complicated development transactions, these new financial partnerships ensure that Related has a ready and deep source of capital to take advantage of virtually any opportunity regardless of size or scale."

Related President Jeff T. Blau said, "This access to new capital offers Related a tremendous competitive advantage. We are currently involved in some of the most ambitious real estate developments in the nation and are competing for a once-in-a-lifetime opportunity to create a 26-acre, vibrant mixed-use waterfront neighborhood at the West Side Yards in New York City. This investment into our company is more than a financial arrangement. These long- term relationships will provide us with the financial flexibility to capitalize quickly on even the most challenging future opportunities. Above all else this show of confidence from the world's most elite investors is a testament to the strength of our team-a group of the brightest and most innovative and skilled employees, who are truly the best in the industry."

Related's current pipeline is comprised of marquee projects across the nation including: Grand Avenue, a multi-phase 3.6 million square foot, $3 billion development spanning three city blocks in downtown Los Angeles, California; the $3 billion, 80-acre Snowmass Village Resort development in Colorado; the 144-acre CityNorth mixed-use development in Phoenix, Arizona; and the development of the 7.5 million square foot Moynihan Station complex in New York City.

Stuart Rothenberg, Global Head of Real Estate Principal Investments at Goldman Sachs, said, "We're excited to make a strategic investment with a best-in-class developer and highly skilled management team. Related has a history of creating value and has developed some of the country's most financially successful projects."

Barry A. Sholem, Partner responsible for MSD Capital's Real Estate

RSS Feeds

Print

Email

Share it  ⌄

Blog it  ⌄

Blog Search  ⌄

**Other News Releases in Banking & Financial Services**

Longtop Financial Technologies Limited Announces Closing of Follow-on Public Offering and Underwriters' Exercise of Over-Allotment Option

Shrinking Inventory, Extended Federal Tax Credit Drive Santa Clara County Housing Market

The Middle East Business Jets Market Has Its Cash Registers Ringing Despite the Economic Downturn, Observes Frost & Sullivan

**Other News Releases in Acquisitions, Mergers and Takeovers**

MAK Capital to Seek Consent of Agilysys, Inc.; Shareholders to Increase Position in Company

Pardee Resources Company, Acquisition of Colorado Coal Reserves

CAMAC Signs Purchase and Sale Agreement on Oyo Oilfield With Pacific Asia Petroleum

**Journalists and Bloggers**

Visit PR Newswire for Journalists for releases, photos, ProfNet experts, and customized feeds just for Media.

View and download archived video content distributed by MultiVu on The Digital Center.

Related Companies Announces $1.4 Billion Equity and Debt Investment by Elite    Page 3 of 3

Founded in 1947, The Olayan Group is a private, multinational enterprise that is both a leading diversified business in Saudi Arabia and a major investor internationally. The group comprises some 50 companies and affiliated businesses engaged in product distribution, manufacturing, services and investment. It has offices in New York, London, Athens, Vienna, Riyadh, Al-Khobar and Jeddah. For more information, visit www.olayan.com.

SOURCE Related Companies

About PR Newswire | Contact PR Newswire | PR Newswire's Terms of Use Apply | Careers | Privacy | Site Map | RSS Feeds
Copyright © 1996-2009 PR Newswire Association LLC. All Rights Reserved.
A United Business Media company.



Quality Hill, Kansas City, MO

MBS has developments in over 30 cities. Please click on a city to learn more about developments in that location.